UNITED STATES

v.

Steven R. BRESEMAN, Commander, U.S. Coast Guard Reserve.

CGCM 9986.
Docket No. 874.

U.S. Coast Guard Court of Military Review.

17 March 1986.

Military Judge: CDR Kevin J. Barry, USCG.

Trial Counsel: CDR James T. Ingham, USCG.

Defense Counsel: LCDR Thomas F. Murphy, Jr., USCG.

Substitute Detailed Defense Counsel: LCDR Frank E. Couper, USCG.

Individual Civilian Counsel: Ned C. Lofton.

Appellate Defense Counsel: LCDR Robert Bruce, USCG.

Appellate Government Counsel: LCDR Thomas J. Donlon, USCG.

## DECISION

BAUM, Chief Judge:

Appellant, a Coast Guard Commander, was tried by a general court-martial composed of officer members and, contrary to his pleas, was convicted of six offenses of conduct unbecoming an officer and a gentleman with two subordinate enlisted women, in violation of Article 133, UCMJ, 10 U.S.C. § 933. His sentence to be dismissed from the service has been approved by the convening authority and the case is now before this Court for review pursuant to

Article 66, UCMJ, 10 U.S.C. § 866. Fourteen errors have been assigned by appellate defense counsel. All are rejected, save assignment of error VI, which questions the sentence action of the convening authority and the adequacy of the post trial legal advice given him with respect to "the proper standards for reassessment of the sentence when findings are disapproved after sentencing."[1] Appellate Government Counsel does not challenge the substance of appellant's assignment. Instead, citing *U.S. v. Goode*, 1 M.J. 3 (C.M.A.1975) and *U.S. v. Reed*, 6 M.J. 860 (C.G.C.M.R.1979), the Government contends that the defense counsel's failure to raise the issue in response to the legal officer's review constitutes waiver of any error in this regard. While normally such is the result of a failure to challenge a defect or error in the staff judge advocate's review, *U.S. v. Goode, supra*, waiver has been rejected when "abnormal" circumstances warrant such action, *U.S. v. Moles*, 10 M.J. 154 (C.M.A.1981); *U.S. v. Morrison*, 3 M.J. 408 (C.M.A.1977); *U.S. v. Barnes*, 3 M.J. 406 (C.M.A.1977). Included within such situations are instances when waiver could result in a "manifest miscarriage of justice," *U.S. v. Clevidence*, 11 M.J. 661 (C.G.C.M.R. 1981); *U.S. v. Myhrberg*, 2 M.J. 534 (A.C. M.R.1976). "or would otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *U.S. v. Berry*, 2 M.J. 576, 579 (A.C.M.R.1977), petition for review by USCMA denied 3 M.J. 339.

■ Here, while the authenticated record of trial was undergoing review by the district legal officer but before that review had been completed and served on defense counsel, the individual civilian defense attorney suddenly and unexpectedly withdrew as counsel. At about the same time, detailed military counsel left active duty and ceased representing appellant.

This resulted in the appointment of a substitute defense counsel with no prior involvement in the case. Substitute counsel was forced to thoroughly familiarize himself with a voluminous record and prepare a response to the seventy page district legal officer's review in a very short period of time. Counsel did remarkably well in this endeavor, producing within the allotted time a prodigious response which detailed numerous assigned errors at every stage of the proceeding. Recognizing, however, that his unfamiliarity with the case prior to the post trial assignment could result in oversights, counsel attempted to foreclose application of the waiver doctrine with the following statement:

> "Although it is [the] usual rule that errors in the post-trial review are waived if they are not noted by defense counsel, that rule is tempered in case law by various factors, such as the inexperience of defense counsel. In this case, substitute defense counsel was not present at trial and has had limited access to detailed defense counsel and individual civilian counsel and background documents that trial defense counsel would consult for trial preparation. In addition, a number of documents that have been requested in post-trial discovery have not yet been provided to me. Finally, a number of appellate exhibits are redacted from the record, one is missing, and one redacted appellate exhibit has not yet been provided to substitute defense counsel. Because of these facts, errors in the post-trial review that are not noted herein, are expressly *not waived* as future appellate issues."

We believe the facts of this case are sufficiently "abnormal" to justify our finding that the issue of sentence reassessment, raised for the first time before this Court, has not been waived. Accordingly, we will consider the assignment on its merits.

---

1. The post trial legal review requirements in this case are governed by law and regulations in effect prior to 1 August 1984, the effective date of the 1983 amendments to the UCMJ and the Manual for Courts-Martial, 1984, since the findings and sentence were adjudged before that date. *See* Exec. Order No. 12473, 49 Fed.Reg. 17152 (1984) as amended by Exec. Order No. 12484, 49 Fed.Reg. 28825 (1984), Manual for Courts-Martial, United States, 1984 dated 13 July 1984.

The legal officer in his review recommended modification of certain findings of guilty based on his evaluation of the evidence. The convening authority followed these recommendations, which in the words of appellate defense counsel, "resulted in approval of findings of: unbecoming conduct by assault consummated by a battery rather than indecent assault in specifications 1 and 3; and unbecoming conduct by improper acts rather than indecent assault in specification 6. As a result of this action the maximum authorized sentence to confinement at hard labor was reduced from 20 years, R at 1027, to 7 years." (footnote omitted).

■ Despite this modification of the findings and reduction of the maximum authorized punishment, the convening authority was not advised by the legal officer of any need for reassessment of the sentence, nor did the convening authority indicate in his action that such a sentence re-evaluation had been accomplished. We agree with appellant that a failure by the convening authority to reassess the sentence and a failure of the legal officer to properly advise the convening authority in this regard constitutes error. *U.S. v. Dowell,* 15 M.J. 351 (C.M.A.1983); *U.S. v. Iosbaker,* 17 M.J. 1097 (A.F.C.M.R.1984); *U.S. v. Hagen,* 9 M.J. 659 (N.C.M.R.1980); *U.S. v. Johnson,* 8 M.J. 634 (A.C.M.R.1979); *U.S. v. Reed, supra.*

Appellant argues that these deficiencies require the record's return for correction at either a rehearing or by the convening authority's reassessing the sentence, with proper advice. Either of these actions could, of course, be taken, but we believe this Court is fully capable of correcting such errors by reassessment of the sentence at this level, applying the appropriate standards in this regard. Those standards were most recently set forth in *U.S. v. Suzuki,* 20 M.J. 248 (C.M.A.1985) by Chief Judge Everett, who said:

> We start from the premise that, when a Court of Military Review reassesses a sentence because of prejudicial error, its task differs from that which it performs in the ordinary review of a case. Under Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, the Court of Military Review must assure that the sentence adjudged is appropriate for the offenses of which the accused has been convicted; and, if the sentence is excessive, it must reduce the sentence to make it appropriate. However, when prejudicial error has occurred in a trial, not only must the Court of Military Review assure that the sentence is appropriate in relation to the affirmed findings of guilty, but also it must assure that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed. Only in this way can the requirements of Article 59(a), UCMJ, 10 U.S.C. § 859(a), be reconciled with the Code provisions that findings and sentence be rendered by the court-martial, *see* Articles 51–52, UCMJ, 10 U.S.C. §§ 851 and 852, respectively.

*Id.* at 249.

■ In this case, the prejudicial error occurred at the post trial review stage of the proceedings rather than during the trial itself. Corrective action will be taken with both stages in mind, however. We will reassess the sentence in light of the findings ultimately approved by the convening authority, while at the same time assuring that the punishment we deem appropriate does not exceed that which we believe the court-martial would have adjudged for these reduced offenses or which the convening authority would have approved, if fully advised.

Upon reassessing the sentence, we note that appellant comes before this Court with approved convictions involving two junior enlisted women of the command over which he exercised authority as executive officer. In the first specification, Commander Breseman has been found guilty of making "sexual advances" to a seaman apprentice (E–2) in his office while she was working after hours in the duty section. The remaining five offenses involve actions with a female fireman (E–3), also a member of his command. These acts occurred in various places over a period of four months.

One specification relates to deportment at the Support Center "All-Hands Club", where Commander Breseman, in uniform in the presence of subordinates, allowed the fireman to sit on his lap and then made certain sexually suggestive remarks to her. In the next specification Commander Breseman was found to have made sexual advances to this young woman at various times while teaching her to drive and, again, at the "All-Hands Club". Another offense occurred in his room aboard the Support Center where he photographed the fireman in various poses of undress, resulting in pictures of her nude from the waist up and nude in the pelvic and buttock areas. Later, in a separate offense, Commander Breseman showed this woman the photographs and asked her to pose again and, subsequently, as found in the last specification, he confronted her and said among other things, "I could throw your pictures around and hurt you."

■ Limiting ourselves to Commander Breseman's behavior, as established in these approved findings of guilty, we have no hesitation in concluding that such conduct is demeaning to this particular officer and also of a nature that detracts from the respect and regard for authority inherent in the military relationship between officers and enlisted. Moreover, in dishonoring and disgracing this individual personally, the conduct seriously compromised his standing as a commissioned officer. Notwithstanding the evidence in extenuation and mitigation relating to Commander Breseman's alcohol and marital problems and his sixteen years of good service to the Coast Guard at the time of trial, we are of the view that a sentence to dismissal from the service, standing alone, is the minimum sentence appropriate for these offenses, and would have been imposed by the trial court and approved by the convening authority for the offenses with which we are now confronted.

Evaluating this sentence further, even if everything the appellant urges excluded from consideration in assignments I A and II A and B had, in fact, been excluded at trial and everything he desires developed in assignment I B and C had been perfected at trial, we would still be of the view that a dismissal is appropriate in this case. Furthermore, the sentence is fitting even if we were to agree with appellant's assertion in assignment XIII that all the offenses pertaining to the course of conduct with the fireman over a four month period were one offense for sentencing purposes. That behavior, whether contained in five specifications or one, cries out for a dismissal from the Coast Guard. As Judge Cox stated in his separate opinion in *U.S. v. Scott*, 21 M.J. 345, 350, 351 (C.M.A.1986):

> In essence, Article 133 is, in every sense, an offense which is unique to the military community and is of special significance therein. It focuses on the fact that an accused is "an officer" and that his conduct has brought discredit upon all officers and, thus, upon the honor, integrity, and good character inherent in this important, unique status. (footnote omitted) ...
>
>     . . . .
>
> ... Too much time has been spent and too many lives have been lost defending this concept [of "an officer and a gentleman"] to let it die now by judicial edict.

While Judge Cox was addressing the question of whether court-martial jurisdiction over the offense of conduct "unbecoming an officer and a gentleman" should pertain in every circumstance, his words have particular relevance when determining the appropriateness of a sentence for such conduct. If the concept of "an officer and a gentleman" is not to be eroded beyond all recognition, the actions by this Commander cannot be countenanced. There is just no place in the Coast Guard for a commissioned officer who has been found guilty of such offenses. Moreover, we do not believe the trial court or the convening authority would have deemed a lesser punishment suitable.

For the foregoing reasons, the findings and sentence approved below are affirmed.

Judges BRIDGMAN, BURGESS and GRACE concur.*

* Judge Lynn did not participate in this case.