UNITED STATES

v.

Senior Master Sergeant William M.
LIPS, FR 041–38–5639, United
States Air Force.

ACM 24883.

U.S. Air Force Court of Military Review.

2 May 1986.

Appellate Counsel for the Accused: Mr. Vaughan E. Taylor and Mr. George Martin Kripner, Jacksonville, North Carolina 28540. Colonel Leo L. Sergi, Major Conrad C. Baldwin, Jr., Captain Timothy J. Malloy and Captain Charles L. Wille.

Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., and Major David F. Barton.

Before HODGSON, FORAY and MICHALSKI Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

This is an appeal from a conviction of rape, forcible sodomy and three allegations of assault culminating in an approved sentence of a dishonorable discharge, 20 years confinement, total forfeitures and reduction to airman basic. The appellant is a senior non-commissioned officer with years of outstanding service. The complaining witness is the dependent wife of a serviceman from whom she was in the process of divorcing although at the time of her encounter with the appellant she was living with another airman. In affirming the conviction we deem it appropriate to discuss some of the assigned errors.

1. Penthouse Variations, May 1984, pages 12–18.

## I

The victim's husband and the appellant were assigned to the same organization and it was at squadron parties that the appellant and the victim first met. She and her husband had been to the appellant's apartment for dinner several times, and on those occasions the appellant's wife was present. After the complainant and her husband separated, she would see the appellant and talk to him—sometimes at the on-base convenience store where she worked. On 3 June, the appellant asked her over for dinner the next evening. She accepted and told her boy friend where she was going, which was about two blocks away. When she arrived at the appellant's house at about 1730 hours and saw his wife was not there, she assumed Mrs. Lips was working and would be home later. While they were sitting in the living room, the appellant tossed her a magazine [1] and said, "Here, read this while I go get ... some appetizers." The article he wished read was entitled "Professor of Pleasure." When she started reading, the appellant put his arm around her shoulder and a knife to her neck, saying, "Drop your pants, shirt and bra." He bent her over the coffee table and tied her hands and legs to it. He then laid underneath her and performed an act of cunnilingus. Later, the appellant pointed a gun at her, said, "Are you ready for the appetizer" and indicated she was to perform fellatio on him. When she exhibited some reluctance, he told her, "[you have] until the count of five to get it in [your] mouth."

While this episode was continuing the appellant put devices on her breasts described as "nipple clamps." There was conflicting testimony as to how painful this apparatus was. He then hit her four or five times on the buttocks with a belt saying, "You can [perform fellatio] better than that." This activity stopped when the phone rang and the appellant answered. When he finished the conversation he brought her a drink and followed her into

the bathroom. In response to her query, "Why me?", the appellant replied, "Because you're the most perfect one—you're separated from your husband and living with another man." He indicated that "7 out 10 rapes go unreported." Subsequently, the appellant cooked a meal for himself and the victim.

Later, they went into the bedroom and engaged in sexual intercourse and mutual oral copulation. During this episode the appellant attempted anal sodomy using a lubricant from a blue and white tube; he was unsuccessful.

The victim left the appellant's apartment at about 2130 hours and went home. She said nothing about the incident to her boy friend until noon the next day when she told him about the incident and he convinced her to report the matter. Medical examination disclosed bruises on her buttocks "three fingers wide" and abrasions on her wrists consistent with being tied with a rope.

A search of the appellant's apartment disclosed a knife, a gun, "nipple clamps" and ropes. Over defense objection the trial judge admitted a video tape and five magazines containing explicit sexual behavior between men and women. The dominant theme of these publications is the physical and sexual abuse of women.

The appellant admitted that his sexual encounter with the complaining witness occurred on the day alleged, but testified that the entire episode was initiated by her when she came to his apartment uninvited. It was she who agreed to do something "kinky" like asking him to "spank" her with a belt. It was her idea to use the "nipple clamps" and it was she who suggested anal sodomy which he declined. The appellant acknowledged he has a "bondage fantasy," and that he had a lubricant in a blue and white tube at his apart-

ment. He also stated the complaining witness suggested that "others" might enjoy this type of activity for money. She then demanded $200.00, and when he refused, threatened to tell his wife and otherwise harm his career. After he gave her only $60.00, she said, "You will pay." He also offered testimony of the victim's next door neighbor who stated she heard the victim say, "Don't hit so hard," "Quit, it hurts" and "Stop." The witness attributed this conversation to some type of sexual activity.

Finally, the appellant offered extensive evidence as to his good character and reputation for truthfulness.

In rebuttal, the government established that it is not unusual for a rape victim to delay reporting the incident because of feelings of shame and belief that no one will accept what happened. Additionally, there was evidence by the victim's exspouse and current partner that her sexual preferences did not include being beaten or physically abused.

II

The appellant contends the trial judge erred in admitting a sexually explicit video tape and similar literature found in his apartment. He argues that Mil.R.Evid. 404(b)[2] does not apply as his possession of the seized material was lawful and not probative of any contested issue. He also urges that the prejudicial effect of the challenged evidence is enormous. *See* Mil.R. Evid. 403.

■ The appellant is correct in that possession of sexually explicit materials is lawful. *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). He is also correct that the admission of such materials is prejudicial. But this is true of any relevant evidence, and in order to be admissible under Rule 404(b) the evidence

---

**2.** Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes.

    **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person

in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

of "OTHER CRIMES, WRONGS OR ACTS" must: 1) Establish a matter in issue other than the accused's propensity to commit the crime charged; 2) The other acts are similar enough to be relevant; 3) The evidence of the other acts is clear and convincing; and 4) The probative value of the other acts is not substantially outweighed by the danger of unfair prejudice. *United States v. Tuchow*, 768 F.2d 855 (7th Cir.1985); *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978). To resolve this assigned error we must examine the record in light of the criteria just stated.

Mil.R.Evid. 404(b) states that evidence of other acts are admissible to establish "... proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The rule provides examples of bases for admission of other acts rather than an exclusive list. By decision we have included *modus operandi*, *United States v. Barus*, 16 M.J. 624 (A.F.C.M.R. 1983), and the accused's consciousness of guilt, *United States v. Borland*, 12 M.J. 855 (A.F.C.M.R.1981), as other reasons for which other acts are admissible.

▮ What matter in issue does the appellant's possession of materials depicting the sexual and physical abuse of women establish? The trial judge admitted the evidence as tending to establish motive, intent, plan and design. Commendably, he explained on the record why he concluded the probative value of the proffered evidence was not outweighed by the danger of unfair prejudice to the appellant. *See United States v. Holt*, 21 M.J. 946 (A.F.C.M.R. 1986). Our task now is to determine whether the trial judge clearly abused his discretion in this regard. *United States v. Barus, supra; United States v. Byrd*, 771 F.2d 215 (7th Cir.1985).

Motive is that which incites or stimulates a person to do an act. *People v. Weiss*, 252 A.D. 463, 300 N.Y.S. 249 (1937). As such it is a state of mind tending to show the basis for that individual's behavior. *See United States v. Watkins*, 21 M.J. 224 (C.M.A. 1986). The possession of graphically posed photographs showing women being sexually and physically abused is a clear indication of the appellant's emotional penchant for sexual aberration. *See State v. Bailey*, 125 Ariz. 263, 609 P.2d 78 App. (1980). Thus, the admission of this material would tend to supply a motive for the appellant to commit the acts alleged.

His trial theory, that the victim had consented to the sexual acts, was tantamount to a denial that he had intended to achieve oral copulation and sexual intercourse by force. The challenged evidence is admissible to establish his intent in this trial by corroborating the victim's testimony that she did not consent to the sexual acts. *People v. Jackson*, 110 Cal.App.3d 560, 167 Cal.Rptr. 915 (1980). Such evidence is relevant because most sex offenses occur in private and the determination of witness credibility is a crucial role. *People v. Thomas*, 20 Cal.3d 457, 143 Cal.Rptr. 215, 573 P.2d 433 (1978).

The seized sexually-oriented material also tends to establish preparation for the charged offenses in the sense that he had photographic depictions available suggesting the activity in which he wished to participate. The photographs and the video tape depicted scenarios for non-consensual sex. These materials together with the knife, gun, ropes, "nipple clamps," lubricant and magazine he initially provided the victim when she arrived, are all indicative of preparation and planning to achieve what the victim said occurred.

Of the remaining *Tuchow* factors, those left are also clearly established. There is no question that the sexual activity portrayed in the magazines and video tape and the offenses being tried are sufficiently alike to be relevant. The photographs shows women being sexually abused in a manner the victim claims happened to her. Also, it is clear that the challenged evidence belonged to him—he admitted the material was his. We further conclude the evidence offered on the question of motive, intent, plan and design was relevant as it had "a tendency to make the existence of any fact that is of consequence to the de-

termination of the action more probable than it would be without the evidence." Mil.R.Evid. 401.

Based upon the facts before us we hold the trial judge was within the broad discretion given him to admit the challenged evidence. We find no basis to overturn the lower court's ruling on this issue. *United States v. Richardson*, 764 F.2d 1514 (11th Cir.1985).

### III

The appellant next argues that the trial judge erred when he allowed Doctor Freddy E. Drummond, a clinical psychologist with experience in counseling rape victims, to testify in rebuttal that a high number of rapes i.e., between approximately 70–90%, go unreported or are delayed in being reported because the victim is ashamed or fearful that no one will believe her. It was the defense's position that Doctor Drummond had no special expertise in this area and relied on hearsay, i.e., books and articles to gain the necessary knowledge. In a collateral assertion of error the appellant also contends that the government should not have been permitted to offer, in rebuttal, testimony that the victim's sexual preferences did not include "rough sex."

■ The purpose of rebuttal evidence is to explain, repel, counteract or disprove the evidence introduced by the opposing party. *United States v. Shaw*, 9 U.S.C. M.A. 267, 26 C.M.R. 47 (1958). Certainly testimony by the victim's past and present sexual partners that she did not enjoy "rough sex" tends to negate evidence by the defense that she did. Further, Doctor Drummond is permitted under Mil.R.Evid. 703 to rely on facts and data known to him that are neither admitted nor admissible in evidence, so long as they are of a type "reasonably relied upon by experts in the particular field in forming an opinion or inference upon the subject. *United States v. Neeley*, 21 M.J. 606 (A.F.C.M.R.1985); *see also United States v. Eastman*, 20 M.J. 948 (A.F.C.M.R. 1985). The admission or exclusion of evidence on rebuttal rests largely within the sound discretion of the

trial judge which we find he properly exercised. *United States v. Posey*, 647 F.2d 1048 (10th Cir.1981).

### IV

■ The appellant also contends he is entitled to a new trial because of improper findings and sentencing arguments by government counsel. Appellant's counsel entered no objection at trial to the now challenged statements made during argument. In view of this, we consider this issue to be waived on appeal in the absence of plain error which doctrine we find no basis here to invoke. R.C.M. 1001(g); *United States v. Fisher*, 21 M.J. 327 (1986); *United States v. Fisher*, 17 M.J. 768 (A.F. C.M.R. 1983).

### V

The appellant argues the evidence is insufficient to prove beyond a reasonable doubt that he is guilty of the offenses charged. He puts forth numerous reasons to support this argument. They are: the victim's testimony is so riddled with inconsistencies that it is not credible; his version of the incident, although it pictures him as less than an ideal husband, is very credible; he has an outstanding military record and a good reputation for truthfulness which lends weight to his version of the facts; and the victim is antagonistic toward him and claimed rape only after he refused to pay her the amount she demanded for the sexual services to which she willingly consented.

That a sexual encounter took place between the appellant and the victim is not disputed—the question is whether she consented to his actions. When a crucial issue must be resolved in terms of essentially "a one-on-one confrontation," corroborative evidence of guilt is a factor to be weighed. *United States v. Pastor*, 8 M.J. 280 (C.M.A. 1980); *United States v. King*, 17 M.J. 1099 (A.F.C.M.R. 1984). The available corroborative evidence includes: the victim reporting the incident, albeit the next day, the gun, knife, ropes, anal lubricant, sexually

explicit video tape, and the sexually-oriented magazine the victim testified the appellant used in the assault were found in his apartment. The appellant's explanation of why he possessed these items was before the court.

Much of the crucial testimony offered by the appellant and the complaining witness is in total conflict. She said he invited her to dinner that evening; he stated she came to his house unannounced. He testified she was the one who broached the subject of "kinky sex" i.e., being bound, beaten, anal sodomy and use of the "nipple clamps,"; her version focused on the appellant using a knife and gun to force her to submit. It is readily apparent that the outcome of the trial rested on the weight the members chose to give to the testimony of each witness. United *United States v. Lecappelain*, 9 M.J. 562 (A.F.C.M.R.1980).

 We have a statutory mandate to review the evidence and in so doing we must judge the credibility of witnesses and determine controverted questions of facts, recognizing that the trial court saw and heard the witnesses. Article 66(c), U.C.M.J., 10 U.S.C. § 866(c). Proof beyond a reasonable doubt as to an accused's guilt does not mean that the evidence must be free of conflict. *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R.1984). This was a vigorously contested trial with both the appellant and the government offering a full measure of evidence to support their theory of the case. We have examined the record of trial and, like the trial court, we are convinced beyond a reasonable doubt that the appellant is guilty of the offenses alleged.

### VI

We have examined the remaining assigned errors and resolve them against the appellant. *United States v. Whiting*, 12 M.J. 253 (C.M.A. 1982); *United States v. Henderson*, ACM 24341, 31 August 1984, *pet. denied*, 21 M.J. 38 (C.M.A.1985); see *United States v. Heriot*, 21 M.J. 11 (C.M.A. 1985).

### VII

 Finally, appellate defense counsel suggest that the approved sentence is inappropriately severe given the appellant's past outstanding military record. It is, of course, true that an outstanding military record is a mitigating factor in reviewing the appropriateness of a sentence. *United States v. Benedict*, 20 M.J. 939 (A.F.C.M.R. 1985). But the scales of punishment must also weigh the seriousness of the crime. Here the appellant has been convicted of a series of aggravated sex offenses with the same victim. Under the facts of this case we consider the approved sentence to be entirely appropriate. For the reasons stated the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge and MICHALSKI, Judge, concur.