# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman BRANDI D. MEDEIROS
## United States Air Force

## ACM S32289

## 2 June 2016

Sentence adjudged 7 October 2014 by SPCM convened at Joint Base San Antonio–Randolph, Texas. Military Judge: Mark W. Milam (sitting alone).

Approved sentence: Bad-conduct discharge, confinement for 7 days, and restriction for one month.

Appellate Counsel for Appellant: Lieutenant Colonel Judith A. Walker, Major Isaac C. Kennen, Major Thomas A. Smith, and Captain Annie W. Morgan.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

MITCHELL, SANTORO, and MAYBERRY
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

SANTORO, Judge:

A military judge sitting as a special court-martial convicted Appellant, pursuant to her plea, of wrongfully using methamphetamine on divers occasions in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. Contrary to her pleas, she was convicted of wrongfully using marijuana on one occasion and endangering the welfare of her child, in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a, 934. The adjudged and approved sentence was a bad-conduct discharge, confinement for 7 days, and restriction to the limits of her base for one month.

Appellant argues that the military judge erred when he admitted, over Defense objection, a child neglect investigation report prepared by the state's child welfare agency and that the evidence was legally and factually insufficient to support her conviction for child endangerment. Our resolution of the latter issue makes it unnecessary to resolve the former.

*Background*

Appellant told the military judge during her guilty plea inquiry that she used methamphetamine with her then-boyfriend, TJ, on three or four weekends in January and February, 2014. TJ introduced the substance to her. The first time she used methamphetamine she did not know what it was (although she did know it was a prohibited substance), but after that initial use TJ told her the substance was methamphetamine.

During the weekend of 23 February 2014, Appellant and a friend, Senior Airman (SrA) SH, went to a mall to get pedicures. They then went to a restaurant where they ate and drank alcoholic beverages for several hours. After leaving the restaurant, they went to a local bar and continued to drink until the bar closed at 0200. SrA SH was too intoxicated to drive so Appellant drove her to the apartment Appellant shared with TJ and their five-month-old daughter, BAH.

Appellant, SrA SH, and TJ drank "razberitas" and smoked methamphetamine and marijuana. Around sunrise, Appellant drove SrA SH back to the bar to retrieve her car. TJ was left in the apartment to care for BAH, who had apparently remained asleep throughout the evening.

The following day, SrA SH, remorseful about her drug use and concerned about BAH's welfare, told a non-commissioned officer what had happened. That disclosure ultimately led to both child protective services and criminal investigations. Child protective services concluded that Appellant had endangered BAH on multiple occasions by leaving her in her father's care while he smoked methamphetamine.

Additional facts necessary to resolve the assignments of error are included below.

*Legal and Factual Sufficiency*

Appellant argues that the evidence is legally and factually insufficient to sustain her conviction for endangering the welfare of her child. The specification at issue alleged that at or near San Antonio, Texas, Appellant:

> on divers occasions between on or about 1 January 2014 and
> on or about 23 February 2014, was responsible for the care of
> [BAH], a child under the age of 16 years, and did endanger the

welfare of [BAH], by leaving the said [BAH] under the care of [TJ] while the said [TJ] smoked methamphetamine, and that such conduct constituted culpable negligence, and that, under the circumstances, the conduct was of a nature to bring discredit upon the armed forces.

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (quoting *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987)). In applying this test, "we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001); *see also United States v. McGinty*, 38 M.J. 131, 132 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of [Appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399. The term reasonable doubt, however, does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The prosecution called two witnesses and introduced one exhibit related to this offense. SrA SH testified about the 23 February 2014 incident, noting that Appellant left TJ alone with BAH while she drove SrA SH back to her car. SrA SH offered no evidence with respect to any other instances in which BAH was in TJ's care.

The remainder of the evidence on this specification came from Mr. JL, an investigator with the Texas Department of Family Services, and a report generated to document the investigation. Mr. JL's testimony suggested that he had authored only (unspecified) portions of the report. His testimony addressing whether Appellant knew TJ was using methamphetamine while caring for their daughter was as follows:

> Q: Did you discuss the allegation against [TJ] with [Appellant] at that point?
>
> A: Yes.

Q:   Okay, and what if anything did she tell you in regard to that?

A:   She had knowledge that he was using methamphetamine while caring for her daughter.

Q:   On multiple occasions?

A:   Multiple occasions.

Q:   Do you know how many?

A:   Without getting to exactly what he said?

Q:   Whatever the accused told you.

A:   She just knew.  She was aware that he was doing it.

Mr. JL testified that the allegation he was investigating was "neglectful supervision" because there was "drug use in the home."

The only other evidence of Appellant's knowledge of TJ's methamphetamine use while caring for their daughter was contained in Mr. JL's department's investigation report, which was admitted as a business record over Defense objection.[1]  The report contains two passages discussing this point.  The first, in an overall summary of the investigation's findings, said:  "[Appellant] also admitted to leaving her child in the care of [TJ] with the knowledge that he was smoking meth while caring for their daughter." The second, in what appears to be a summary of Mr. JL's interview of Appellant, said: "She admitted to having knowledge of [TJ] smokinh (sic) meth on a regular basis while caring for their daughter during the week while she is at work."

TJ did not testify.  However, the investigative report indicates that he made the following statement regarding his methamphetamine use while caring for BAH:  "He indicated he smoked meth in the home while caring for his daughter to help him stay up because he is as (sic) light sleeper."  A paragraph summarizing the entire investigation, which appears not to document a separate interview but a summary of all investigative steps, adds an additional detail not found in the interview summary:  "He indicated he would smoke meth amphetamines (sic) approximately 2 to 3 times a week and would smoke in the restroom while his daughter was in her bedroom."

---

[1] Our analysis of this issue assumes, without deciding, that the investigative report was properly admitted.

The prosecution offered no evidence concerning the amount of methamphetamine TJ used on any of these occasions. There was no evidence of the effect, if any (other than staying awake), that it had on him. There was no evidence concerning the effects of methamphetamine generally, or on people of TJ's height, weight, build, and/or drug use history. There was no evidence that there was any actual harm to BAH.

Mr. JL also noted that Appellant's apartment was clean, that BAH had food and diapers, was well-developed and well-nourished, and appeared to have bonded well with TJ. She had no bruises, diaper rash, or any physical signs of abuse or neglect.

The specification required the Government to prove that Appellant's conduct was culpably negligent. Culpable negligence is

> a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. In the context of this offense, culpable negligence may include acts that, when viewed in the light of human experience, might foreseeably result in harm to a child, even though such harm would not necessarily be the natural and probable consequences of such acts.

*Manual for Courts-Martial, United States*, pt. IV, ¶ 68a.c.(3) (2012 ed.).

The prosecution's theory appeared to be that the use of any quantity of methamphetamine (no matter how small) while caring for a child was an offense. That belief was bolstered by the testimony of Mr. JL, who opined that "[u]sing drugs in the home while caring for a child is neglectful supervision under Texas family code." The military judge's questioning of Mr. JL also reflects this strict-liability theory.

Our superior court has stated,

> [A] criminal conviction for child endangerment requires more than a showing of irresponsible behavior coupled with speculation by the prosecution about what possibly could have happened to a child as a consequence of an accused's conduct. Rather, it requires proof that the accused's conduct, either through design or culpable negligence, resulted in a reasonable probability that the child would be harmed.

*United States v. Plant*, 74 M.J. 297, 300 (C.A.A.F. 2015). In *Plant*, the accused was convicted of child endangerment when he drank an excessive amount of alcohol while caring for his 13-month-old child. *Id*. at 298–99. The child was a normal, healthy 13-month-old without any apparent special needs and was in his crib and away from Plant's

alcohol use at the time of the offense. *Id*. In finding the evidence legally insufficient to sustain Plant's conviction, our superior court noted that while Plant's actions were irresponsible and "the possibility of harm could not be ruled out, . . . no rational trier of fact could have found beyond a reasonable doubt that there was a reasonable probability that [the child's] mental or physical health, safety, or welfare were endangered on the night in question." *Id*. at 300.

Although Appellant's case is distinguishable from *Plant* in that methamphetamine is per se illegal whereas alcohol is not, the required evidentiary predicate—that there be a reasonable *probability* of harm—remains the same. Based on the absence of any evidence concerning the quantity of methamphetamine TJ ingested on any or all of the occasions on which he was the sole caretaker for BAH, the lack of evidence of the effects of methamphetamine, and the reasonable probability of impairment of functioning or reasoning, we conclude that the evidence is legally insufficient to support Appellant's conviction for child endangerment.

Moreover, having reviewed the entire record of trial, in particular noting the vague generalities of the statements attributed both to Appellant and TJ, we are not persuaded beyond a reasonable doubt that Appellant is factually guilty of child endangerment. With respect to the 23 February 2014 incident when Appellant left BAH in TJ's care while she returned SrA SH to her car, while there is evidence of methamphetamine use (coupled with marijuana and alcohol use), there is no evidence of the effects those substances might reasonably have had on TJ.[2] We also note that the military judge found Appellant not guilty of driving a vehicle while impaired by drugs at that same time and the evidence suggested that the quantity of controlled substances ingested by Appellant and TJ were similar, further casting doubt on whether TJ was sufficiently impaired by methamphetamine to meet the prosecution's burden of proof.

With respect to the occasions prior to 23 February 2014, we find Mr. JL's testimony failed to establish *when* Appellant became aware that TJ was using methamphetamine while caring for their daughter. His testimony could equally be understood to mean that Appellant learned of TJ's methamphetamine use with the child *after* child protective services had been called as that she had been aware of it at the time she left BAH in his care.

As we find Appellant's conviction for child endangerment both legally and factually insufficient, we set aside the findings of guilty to this charge and specification.

---

[2] Even had such evidence been introduced, we question whether the specification's allegation that endangerment occurred "*while* [TJ] was smoking methamphetamine" would have been factually or legally sufficient, in that the evidence established that the methamphetamine use had concluded when Appellant left BAH in TJ's care. (Emphasis added.)

*Sentence Reassessment*

Having set aside and dismissed the child endangerment charge, we must next determine whether we can reassess the sentence or must return the case to the convening authority for a rehearing. We have "broad discretion" when reassessing sentences. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Our superior court has repeatedly held that if we "can determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

This analysis is based on a totality of the circumstances with the following as illustrative factors: dramatic changes in the penalty landscape and exposure, the forum, whether the remaining offenses capture the gravamen of the criminal conduct, whether significant or aggravating circumstances remain admissible and relevant, and whether the remaining offenses are the type that we as appellate judges have experience and familiarity with to reliably determine what sentence would have been imposed at trial. *Winckelmann*, 73 M.J. at 15–16.

The penalty landscape has not dramatically changed. Appellant was tried by a special court-martial which could have imposed no more than a bad-conduct discharge and one year in confinement. The offenses for which we affirm her convictions—using methamphetamine on divers occasions and using marijuana on a single occasion—still subject Appellant to the jurisdictional maximum of the court-martial.

It is less clear whether the child endangerment offense or the drug offenses were considered more severe by the sentencing authority. Because the sentencing authority was a military judge, we are more likely as appellate military judges to be confident of the sentence the military judge would have adjudged absent the error. Moreover, less than one page of trial counsel's 12-page sentence argument discussed the child endangerment offense.

Applying the *Winckelmann* factors to this case, we are confident that reassessment by this court is appropriate. The remaining offenses of illegal drug use are offenses that we have familiarity with in determining appropriate and just sentences. Appellant's use of methamphetamine on multiple occasions was neither experimental nor unplanned. She told SrA SH that she had determined when and how much methamphetamine and marijuana she could use to avoid being caught by the Air Force's drug detection program and planned her drug use accordingly. Absent any error, the adjudged sentence would have been no less severe than a bad-conduct discharge. This reassessed sentence is free of any prejudicial effects of error.

*Conclusion*

The findings of guilty to Specification 2 of the Additional Charge and the Additional Charge are set aside and dismissed. The remaining findings of guilty are affirmed. We have reassessed the sentence to a bad-conduct discharge. The findings, as modified, and the sentence, as reassessed, are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant remains. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings, as modified, and the sentence, as reassessed, are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

ACM S32289