*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, GROSS, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Ahmar D. TAYLOR**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202400313**

_____

Decided: 29 January 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Ryan C. Lipton

Sentence adjudged 5 April 2024 by a general court-martial tried at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: confinement for 4 months, reduction to pay grade E-1, and a bad-conduct discharge.

For Appellant:
*Lieutenant Commander Marc D. Hendel, JAGC, USN*

For Appellee:
*Lieutenant Michael G. Osborn, JAGC, USN (argued)*
*Lieutenant K. Matthew Parker, JAGC, USN (on brief)*
*Major Mary Claire Finnen, USMC (on brief)*

Senior Judge GROSS delivered the opinion of the Court, in which Chief Judge DALY and Judge de GROOT joined.

––––––––––––––––––––––

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

––––––––––––––––––––––

GROSS, Senior Judge:

A military judge sitting alone as a general court-martial convicted Appellant, contrary to his plea, of one specification of knowingly and wrongfully viewing child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ).[1] Before us, Appellant raises six assignments of error.[2] We find that Appellant's conviction for wrongfully viewing child pornography is factually insufficient, rendering the remaining Assignments of Error moot, and we take action in our decretal paragraph.

---

[1] 10 U.S.C. § 934.

[2] I. Is the evidence factually insufficient to support Appellant's conviction where there was no evidence that Appellant knowingly and wrongfully viewed the charged child pornography?

II. Is the evidence legally sufficient where the facts fail to support the element of knowing and wrongful viewing of child pornography within the charged timeframe?

III. Did the military judge abuse his discretion when he admitted videos into evidence on the basis of being self-authenticating?

IV. Was Appellant's right to confrontation, as recently clarified by the Supreme Court in *Smith v.* Arizona, 602 U.S. 779 (2024), violated?

V. Did the military judge abuse his discretion when he considered the substance of hearsay testimony admitted only for a limited purpose?

VI. Does the Specification provide insufficient particularity as to the alleged dates, violating Appellant's Sixth Amendment right to have a meaningful opportunity to present a defense?

## I. BACKGROUND

In September 2021, Naval Criminal Investigation Service (NCIS) Special Agent (SA) Kilo[3] received a notification from the National Center for Missing and Exploited Children that suspected child pornography was found on an account with the online storage and sharing application Dropbox. Through her investigation, SA Kilo determined that the account was created using an email address linked to Appellant's phone number and that the Dropbox account was opened using an IP address that was associated with Appellant's roommate, Corporal (Cpl) Lima.

Dropbox responded to a warrant for stored communications by sending SA Kilo links that included subscriber data, the contents of Appellant's Dropbox account, and a spreadsheet purporting to contain the metadata for the contents of the Dropbox account. The Dropbox materials did not indicate the upload dates of the files or whether and by whom the files or folders were accessed or modified. Dropbox also showed that Appellant's account was accessed on two occasions by an iPhone 12. No further information was produced regarding the owner or user of the iPhone 12.

Within the Dropbox return were 11 files that formed the basis for the charge against Appellant. Among those 11 files were four videos that were labeled Snapchat 15758958882; Snapchat 18515138443; Snapchat 832497754; and Snapchat 1978542075. According to testimony introduced at trial, these videos were contained within a file folder titled Vault/UA/ua.

Appellant was interrogated by NCIS SA Mitch while onboard *USS Kearsarge* (LHD-3). After reading Appellant his Article 31(b) rights, SA Mitch asked Appellant, "Why are you suspected of child pornography offenses?" to which Appellant replied, "I don't know." Appellant continued to deny ever having knowingly sought out or downloaded child pornography materials throughout the interview. However, he made several admissions germane to the Government's decision to charge him. Specifically, Appellant admitted to owning the Dropbox account with the child pornography videos, the email account associated with the Dropbox account, and the phone number associated with the email address. Appellant also admitted that he had been exposed to child pornography images on Snapchat from unknown accounts that had "quick added"

---

[3] All names other than those of Appellant, counsel, appellants in other reported cases, and military judges are pseudonyms.

him,[4] but that when he encountered those materials he did not save the images and he blocked the user who had posted them.

Special Agent Mitch repeatedly pressed Appellant throughout the interview, which lasted more than two hours, telling Appellant that he did not believe Appellant's version of events and that the digital forensics contradicted Appellant's story. Appellant expressed frustration with his inability to explain how the videos ended up in his Dropbox account and admitted it was "possible" that he downloaded the videos without remembering because there was a time in his life where he had been drinking heavily and blacking out. When SA Mitch pressed him, Appellant said that this explanation for how the videos ended up on his Dropbox account was "very possible." Eventually Appellant acquiesced when SA Mitch opined that this scenario was "probable." However, Appellant remained adamant that he had no recollection of those events.

After interrogating Appellant, SA Mitch seized numerous electronic devices from Appellant, including his iPhone 11, his computer, his external hard drive, and his Nintendo Switch gaming console. These items were sent to the Defense Cyber Crime Center (DC3), where they were examined by Mr. Mike. None of these items had any evidence indicative of searching for, viewing, uploading, or storing child pornography, and none of these items had evidence that they had ever accessed the Dropbox account, let alone the charged media files within it.

The Government eventually charged Appellant with one specification of viewing child pornography and one specification of possessing child pornography. However, prior to trial the Government withdrew and dismissed the possession specification. At trial, the Government called Mr. Mike to testify to his findings in reviewing both the Dropbox return and Appellant's electronic devices. On cross-examination, the following exchange occurred:

> Q [ADC]. On any of the physical devices that you searched, did you find any evidence that Lance Corporal Taylor viewed child pornography?
>
> A. I did not.
>
> Q. Now . . . you reviewed . . . the Dropbox return; is that correct?
>
> A. That is correct.

---

[4] Appellant explained in his NCIS interview that other Snapchat users could randomly add large numbers of accounts to connect with on the application.

Q. And in your expert opinion, after reviewing all physical devices along with the Dropbox return, is there any forensic evidence that Lance Corporal Taylor viewed child pornography?

A. I found no evidence of viewing of child pornography.[5]

The military judge found Appellant guilty of wrongful viewing of the four videos with "Snapchat" in the title. Central to the military judge's special findings was the fact that the word "Snapchat" in the title of each of the videos was circumstantial evidence that the videos had derived from Snapchat. The military judge also found the fact that the file folders were labeled UA was circumstantial evidence that the label UA was an acronym for "underage." The military judge then concluded that Appellant's viewing was not unintentional or inadvertent.[6]

## II. DISCUSSION

**Factual Sufficiency**

*1. Law*

For convictions of crimes that occurred prior to 2021, we review factual sufficiency de novo.[7] The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are convinced of an appellant's guilt beyond a reasonable doubt.[8] Review of the factual sufficiency of the evidence is a special power and duty that Article 66(d)(1), UCMJ, confers only on the courts of criminal appeals (CCA).[9] "This 'awesome, plenary, de novo power' requires us to weigh all the admitted evidence and testimony at trial, make 'allowances

---

[5] R. at 622-23.

[6] App. Ex. XLIX.

[7] Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2019); *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017).

[8] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also* Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1) (2019) ("In considering the record, the Court may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.").

[9] *United States v. Thompson*, 83 M.J. 1, 3 (C.A.A.F. 2022) (citing *United States v. Nerad*, 69 M.J. 138, 141 n.1 (C.A.A.F. 2010)).

for not having personally observed the witnesses,' and decide whether we are convinced of the Accused's guilt beyond a reasonable doubt."[10]

We presume neither innocence nor guilt, and instead take "a fresh, impartial look at the evidence" to independently determine whether each element has been satisfied with proof beyond a reasonable doubt.[11] Proof beyond a reasonable doubt "does not mean the evidence must be free from conflict."[12] If the evidence admitted at trial leaves us with a "fair and reasonable hypothesis except that of guilt," we are required to set aside the conviction.[13]

*2. Analysis*

Having reviewed the evidence presented at trial and made allowances for the fact that we did not personally see and hear the testimony of the witnesses, we conclude the Government failed to prove beyond a reasonable doubt that Appellant knowingly viewed the charged videos. The Government argues that we should consider the factual circumstances of two cases—*United States v. King*[14] and *United States v. MacWhinnie*[15]—to affirm Appellant's conviction. We will discuss both cases and show why, on the whole, they tend to highlight the deficiencies present in Appellant's case under a factual sufficiency standard rather than support a finding of guilt beyond a reasonable doubt.

In *King*, the Court of Appeals for the Armed Forces (CAAF) considered a challenge to the legal sufficiency of a conviction for viewing child pornography. The CAAF stated that "direct evidence of . . . viewing child pornography will be rare" and said that finders of fact can draw reasonable inferences from the circumstantial evidence in the case.[16] However, the evidence in *King* was substantially greater than that presented by the Government in Appellant's case.

There, CAAF noted that Airman First Class King had admitted to searching for "preteen girls" and looking at nude images of underage girls.[17] When

---

[10] *United States v. Armendariz*, 82 M.J. 712, 722 (N-M. Ct. Crim. App. 2022) (quoting *United States v. Kelly*, 77 M.J. 404, 406 (C.M.A. 1990); *Turner*, 25 M.J. at 325).

[11] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[12] *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

[13] *Armendariz*, 82 M.J. at 723.

[14] 78 M.J. 218 (C.A.A.F. 2019).

[15] No. 201900243, 2021 CCA LEXIS 92 (N-M. Ct. Crim. App. 2021) (unpublished)

[16] *King*, 78 M.J. at 221.

[17] *Id.* at 219.

questioned, Airman First Class King also admitted that he was aroused by the images of children that he saw.[18] A digital forensic examiner testified that someone on Airman First Class King's computer navigated to a website that contained the charged images of child pornography, and the images that Airman First Class King was accused of viewing were also found in the cache on his computer.[19] Here, no such evidence was found on any of Appellant's devices, and Appellant steadfastly denied looking for anything related to children in his pornographic pursuits.

Similarly, the Government argues that we should consider the facts of *United States v. MacWhinnie*, in which this Court found a conviction for viewing child pornography factually sufficient despite the lack of direct evidence of viewing. There we found:

> most compelling . . . evidence that: (1) the [shipboard computer] logs show Appellant's username accessed Pinterest from the ship at the times the charged images were saved or "pinned" to his Pinterest account; (2) to access Pinterest from a government computer aboard the *San Antonio* required the user to use his common access card and personal identification number; and (3) to save or "pin" an image to a Pinterest account requires concerted action either to upload the image from outside Pinterest (e.g., from a personal device or another webpage) or to actively select the image from elsewhere within Pinterest and save or "re-pin" it onto the user's Pinterest account.[20]

*MacWhinnie* also involved additional evidence and images admitted by the military judge under Military Rule of Evidence (Mil. R. Evid.) 404(b) to show Chief MacWhinnie's knowledge, intent, and lack of mistake or accident in viewing the images.[21] Here, again, there was nothing to show that Appellant ever accessed the videos or files on his Dropbox account or that he even knew what was there, and the government presented no evidence under Mil. R. Evid. 404(b) to demonstrate Appellant's practices in viewing and sorting images that was present in *MacWhinnie*.

We do not take issue with the Government's argument that direct evidence of viewing child pornography will be rare. However, we find that both *King* and *MacWhinnie* are easily distinguishable from this case. As an initial matter, in

---

[18] *Id.*

[19] *Id.* at 220.

[20] *MacWhinnie*, 2021 CCA LEXIS 92 at *13-14.

[21] *Id.* at *9.

both *King* and *MacWhinnie*, the Government was able to introduce evidence that tied the evidence from the electronic service provider to a computing device owned or accessed by the appellant. In both cases, there was evidence that the appellant had searched for images associated with child pornography. Here, the Government's own expert conceded that he found *no evidence* of any of Appellant's devices accessing Dropbox, and similarly *no evidence* that Appellant viewed or even searched for child pornography.

Additionally, both *King* and *MacWhinnie* involved admissions by the appellant that corroborated some key aspect of the Government's case. Here, the Government tries to make much of Appellant's statement that it was "possible" or even "probable" that he downloaded child pornography to his Dropbox account and that he had inadvertently been exposed to child pornography on Snapchat. We do not ascribe the same strength to these statements that the Government and the military judge did. Unlike the appellants in *King* and *MacWhinnie*, Appellant never admitted to being interested in, searching for, or saving material involving children. The closest he came to an admission was acknowledging that it was "possible" or even "probable" that he had saved the videos while blacked out, but he quickly caveated that concession by saying he had no memory of doing so.

Of course, suspects can and do lie to investigators. Here, though, the forensics did not provide the connective tissue necessary to show that Appellant both saved the four videos in question and knowingly and wrongfully viewed them as well. Indeed, some of the digital forensic evidence increased the dubious nature of the evidence, including the fact that Dropbox had been accessed at least twice by an iPhone 12—a newer model than the one owned by Appellant. There was no evidence to show that any of the 11 videos charged, or the 4 for which Appellant was convicted, had ever been accessed or viewed by *anyone*.

The military judge's conclusion—that Appellant had named the file folder where the videos were found "Vault/UA/ua"—was unsupported by any testimony or direct evidence. We find that there are at least two reasonable alternatives to the forensic evidence or lack thereof in this case. One is that some other unknown individual placed the files in Appellant's Dropbox account. Another is that Appellant placed the folders there without ever having actually seen their contents. Both of these provide some other fair and reasonable hypothesis other than that of Appellant's guilt.

Similarly, the military judge's conclusion that the word "Snapchat" in the file names was indicative that the files were derived from that application and were the same ones Appellant admitted to seeing (albeit inadvertently) was likewise unsupported by any direct evidence. Although the Government proffered in a pretrial motions session that they would introduce evidence to this

effect, no witness testified regarding this matter. Having reviewed the record, we determine that the Government did not meet its heavy burden to prove that Appellant knowingly and wrongfully viewed the charged videos.

### III. CONCLUSION

After careful consideration of the record and briefs and argument of appellate counsel, the finding and sentence are **SET ASIDE** and the Charge and Specification are **DISMISSED WITH PREJUDICE.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court