**UNITED STATES, Appellee,**

v.

**Thomas G. BARRON, Sergeant,
U.S. Army, Appellant.**

No. 98–0210.
Crim.App. No. 9501189.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 12, 1999.

Decided Sept. 27, 1999.

**2**

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Donald P. Chisholm* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Adele H. Odegard* and *Major Holly S.G. Coffey* (on brief); *Lieutenant Colonel Michael L. Walters* and *Captain T. Michael Guiffre*.

For Appellee: *Captain Marcella Edwards–Burden* (argued); *Colonel Russell S. Estey* and *Major Lyle D. Jentzer* (on brief); *Lieutenant Colonel Eugene R. Milhizer* and *Captain Steven H. Levin*.

Judge SULLIVAN delivered the opinion of the Court.

Appellant was tried by a general court-martial composed of officer members at Fort Stewart, Georgia, on various dates in 1995. Contrary to his pleas, he was found guilty of committing indecent acts with a minor female (2 specifications) and indecent assault on that same child (2 specifications), in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. On June 29, 1995, he was sentenced to a bad-conduct discharge, 4 years' confinement, forfeiture of $854.00 pay per month for 6 months, and reduction to the lowest enlisted pay grade. On March 25, 1996, the convening authority approved the adjudged sentence. The Court of Criminal Appeals affirmed the findings and sentence on November 19, 1997.

This Court, on July 17, 1998, granted two issues for review:

## I.

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO DECLARE A MISTRIAL ON THE BASIS OF DOCTOR COOPER'S ACTIONS AT TRIAL.

## II.

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO GRANT THE DEFENSE MOTION TO COMPEL DISCOVERY OF DOCTOR COOPER'S NOTES AND BASIS FOR HER OPINION PRIOR TO DIRECT AND CROSS–EXAMINATION.

We also specified a third issue for consideration:

## III.

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN, AFTER FINDING AS A MATTER OF FACT THAT DOCTOR COOPER HAD ABANDONED HER ROLE AS AN EXPERT WITNESS AND HAD BECOME A PARTISAN ADVOCATE FOR THE GOVERNMENT, HE: (1) FAILED TO DISQUALIFY HER AS AN EXPERT WITNESS; (2) GAVE THE EXPERT WITNESS INSTRUCTION; (3) ALLOWED HER TO TESTIFY AS A REBUTTAL WITNESS AND AS A WITNESS IN AGGRAVATION; AND (4) FAILED TO INSTRUCT THE PANEL TO DISREGARD HER TESTIMONY IN TOTO.

We decide these questions in the Government's favor.

The record before us shows that appellant was charged with a series of sexual acts with J.D., an 8–year–old girl. J.D. was the daughter of appellant's off-base friend and a close companion of his family. She testified that appellant committed various indecent sexual acts and assaults upon her.

As part of the prosecution's case-in-chief, Dr. Sharon Cooper was called and qualified as an expert witness in pediatric medicine, developmental behavioral pediatrics, and the identification and treatment of sexually and physically abused children. During Dr. Cooper's testimony, she referred to therapy reports on the alleged victim prepared by Linda Barnes of the Savannah Psychotherapy Center, which she reviewed in preparation for her testimony. The defense objected and claimed it had not received a copy of these reports. The military judge agreed that these reports should be made available to the defense and ordered their production. The record reflects that the judge allowed the Government to complete its direct examination of Dr. Cooper but also granted a continuance to the defense in order to allow them additional time to review the newly disclosed evidence and consult with their expert. The judge also allowed defense counsel to conduct its cross-examination of Dr. Cooper at a later date.

The defense subsequently requested all the materials that Dr. Cooper actually used to prepare for her testimony. Dr. Cooper testified that she did not want to disclose these materials because she made personal notes and impressions on these documents. The military judge ordered the documents to be produced without her notes.

Later, during the Government's cross-examination of the defense expert, Mrs. Paula Waxman, Dr. Cooper passed four notes to government counsel. The judge stated that the notes contained suggested questions for trial counsel to ask Mrs. Waxman. Defense counsel moved to disqualify Dr. Cooper from further participation in the case and to prohibit note-passing.

The trial record reflects that the defense characterized the note-passing as evidence that Dr. Cooper crossed the line to become, in effect, a *de facto* prosecutor. In his brief, appellant asserts without contradiction by the Government that Dr. Cooper's actions "were not surreptitious, secret dealings. She huffed and puffed in the back of the courtroom, bellowing loudly then scribbled furiously. When finished with each of the four memos she then stormed to the bailiff, in full view of all, *including the court members*, gave the notes to him, and ordered him to deliver them forward." Final Brief at 5.

The judge ordered government counsel to end the note-passing, but denied the motion to disqualify Dr. Cooper and marked the four notes as Appellate Exhibit XV. Although he denied the defense-initiated motion for mistrial, the record reflects that he took specific action to remedy potential prejudice. First, he allowed the defense to ask specific questions pertaining to Appellate Exhibit XV when cross-examining Dr. Cooper. Second, he issued the members the following curative instruction, which indicated that Dr. Cooper's conduct reflected on her credibility as a witness:

MJ: Members of the court, I appreciate your patience. In this case Colonel Cooper has been sitting in the courtroom during the testimony of Ms. Waxman. I allowed her to sit in the courtroom to hopefully permit the expert testimony to be developed more quickly and efficiently, as I would have expected Colonel Cooper and other potential witnesses to be recalled as witnesses in this case. If you noticed during the examination of Ms. Waxman, notes were being passed to the trial counsel. These notes originated from Colonel Cooper and provided questions to the prosecution to ask Ms. Waxman. Many of the questions asked by Captain Powell [the prosecutor] apparently were taken directly from those notes. *The actions of Colonel Cooper and the trial counsel involving these notes were totally improper. Colonel Cooper's behavior was entirely inappropriate in taking such an active participation in the case, as it was ongoing.* Expert witnesses are supposed to provide unbiased opinions based upon their expertise, not

to actively attempt to become involved in the prosecution of the case.

Even if she is not recalled as a witness to testify in this case, in determining the credibility of Colonel Cooper's *testimony you should consider the fact that she departed from her role as an expert witness and became, in effect, a de facto member of the prosecution. You should, therefore, in effect, consider that Colonel Cooper has shown herself to be a biased witness in favor of the alleged child victim in this case.* I have also precluded Colonel Cooper from further sitting in the courtroom during the testimony of any further witnesses.

Is that instruction understood?

[Affirmative responses from members]

MJ: *In effect, Colonel Cooper has a mark against her, at least one, based upon what she did here* and then anything else that you may have decided based upon the testimony you may consider as marks against her. But that was totally inappropriate and hopefully I have taken the appropriate remedy.

(Emphasis added.)

Defense counsel also made an objection regarding the failure of the Government to provide full discovery. The Government had recently acquired still another medical report from Linda Barnes. The judge granted the defense request to preclude Dr. Cooper from discussing this additional record if she were called to testify again.

After the defense rested, trial counsel asked for reconsideration of the above-noted instruction. The trial judge denied this motion and stated that he still considered Dr. Cooper an expert witness. Dr. Cooper then testified in rebuttal. The defense exercised its option to cross-examine her, and asked if she passed notes and suggested questions. Dr. Cooper admitted as much, and testified that she behaved as she routinely did in every case. The military judge subsequently gave a standard expert-testimony instruction for all experts at trial, including Dr. Cooper.

## MISTRIAL

Appellant initially argues that his mistrial request should have been granted because a prosecution expert witness engaged in certain disqualifying actions which indicated her bias in favor of the prosecution. Appellant notes that the military judge found that Dr. Cooper was a "*de facto* member of the prosecution." He then argues, citing certain military and civilian cases, that a mistrial should have been declared because such witness misconduct created substantial doubt about the fairness of the proceedings. *See United States v. Rushatz*, 31 MJ 450, 457–58 (CMA 1990) (claim of disruptive prosecutorial conduct).

▮ A mistrial is a drastic remedy which a judge should only grant in extraordinary cases. Judge Wiss, writing in *United States v. Dancy*, 38 MJ 1, 6 (CMA 1993), succinctly described this remedy as follows:

"Declaration of a mistrial is a drastic remedy, and such relief will be granted only to prevent a manifest injustice against the accused." *United States v. Rushatz*, 31 MJ 450, 456 (CMA 1990). It is appropriate only "whenever circumstances arise that cast substantial doubt upon the fairness or impartiality of the trial." *United States v. Waldron*, 15 USCMA 628, 631, 36 CMR 126, 129 (1966). The military judge's decision regarding motions for a mistrial will be measured for abuse of discretion. [*United States v. Rosser*, 6 MJ 267 (CMA 1979); *United States v. Jeanbaptiste*, 5 MJ 374 (CMA 1978); *United States v. Patrick*, 8 USCMA 212, 24 CMR 22 (1957); S. Childress & M. Davis, 1 *Federal Standards of Review*, Trial Judge: Supervision and Discretion § 4.08 at 4–54 (2d ed.1992).]

▮ Moreover, in *Rushatz*, 31 MJ at 456, this Court stated that giving a curative instruction is the preferred remedy in lieu of declaring a mistrial. It said:

Giving a curative instruction, rather than declaring a mistrial, is the preferred remedy for curing error ... as long as the curative instruction avoids prejudice to the

accused. *United States v. Evans,* 27 MJ 34, 39 (CMA 1988), *cert. denied,* 488 U.S. 1011, 109 S.Ct. 797, 102 L.Ed.2d 788 (1989). Absent evidence to the contrary, a jury is presumed to have complied with the judge's instructions. *See Lakeside v. Oregon,* 435 U.S. 333, 340, 98 S.Ct. 1091, 1095, 55 L.Ed.2d 319 (1978); *United States v. Ricketts,* 1 MJ 78, 82 (CMA 1975); *Donaldson v. United States,* 248 F.2d 364 (9th Cir.1957), *cert. denied,* 356 U.S. 922, 78 S.Ct. 706, 2 L.Ed.2d 717 (1958).

Finally, in *United States v. Balagna,* 33 MJ 54 (CMA 1991), this Court dealt with a situation where curative instructions, rather than a mistrial, were adequate to neutralize certain inadmissible evidence which might have prejudiced the accused. There, a prosecution witness improperly revealed to members that the accused had submitted a request in lieu of trial that he be discharged for the good of the service pursuant to Chapter 10 of Army Regulation 635–200. We recognized that the panel members probably knew that a Chapter 10 request required some admission of guilt. Nevertheless, the military judge did not declare a mistrial, but instead issued curative instructions to the members that this evidence was inadmissible and that they should completely disregard this testimony. *Id.* at 55. Then–Judge Cox, writing for a unanimous Court, found no "extraordinary circumstances" that required a mistrial because "the adverse impact" of this inculpatory evidence was neutralized by these curative instructions. *Id.* at 57.

■ Turning to the present case, we note that the legal authorities cited by appellant do not establish a *per se* rule that a mistrial must be declared *when a prosecutor* testifies in a case in which he is prosecuting. *See generally Robinson v. United States,* 32 F.2d 505, 510 (8th Cir.1929) (although testimony by prosecutor does not require reversal, prosecutor should not testify "except under most extraordinary circumstances"). Thus, we doubt such a rule exists for a prosecution expert who somehow acts as a

prosecutor in front of the members. Moreover, the trial judge granted the defense's alternative request to fully cross-examine this prosecution expert and reveal her pro-prosecutorial conduct to the members. Any bias, beyond that normally attributed to the party who called her, was therefore fully disclosed to the members. Also, the military judge gave a particularly focused instruction to the members on evaluating this witness' credibility, which tended to disparage Dr. Cooper's testimony and was generally detrimental to the prosecution's case. *See United States v. Balagna, supra* (curative instructions even in extreme cases may suffice to avoid mistrial). Finally, we are not convinced that Dr. Cooper's conduct was so prejudicial to the defense that curative instructions were unlikely to cure it. *United States v. Klein,* 546 F.2d 1259, 1262–63 (5th Cir. 1977), quoted in *United States v. Escalante,* 637 F.2d 1197, 1203 (9th Cir.1980). In sum, we find no abuse of discretion when the trial judge refused to grant a mistrial.

## INADEQUATE ALTERNATE REMEDY

■ The specified issue further questions the legal adequacy of the remedial actions ordered by the trial judge in lieu of declaring a mistrial. Appellant argues that his military judge had inherent authority to disqualify an expert witness in certain circumstances, and he should have done so as requested by the defense in this case. He further asserts that this expert's conduct and the judge's acknowledgement of her prosecutorial status "retroactively enhance[d] the validity of her testimony" in a close case determined largely on the basis of expert testimony. Final Brief at 12. He concludes that the trial judge's actions compounded, not cured, the prejudice created by Dr. Cooper's misconduct.

As a starting point, we note that Mil. R.Evid. 702 and 706, Manual for Courts–Martial, United States (1995 ed.),[1] permit the admission of expert opinion testimony at court-martial by a government expert, a de-

---

1. All Manual provisions are cited to the version applicable at the time of trial. The 1998 version

is unchanged, unless otherwise indicated.

fense expert, and a court expert. *See* Art. 46, UCMJ, 10 USC § 846; RCM 703(d) Manual, *supra.* Our case law recognizes that the trial judge decides whether a proffered witness is an expert for purposes of these rules (qualified as an expert by knowledge, skill, expertise, training, and education). *See United States v. Harris,* 46 MJ 221, 224 (1997). We review his decision using an abuse of discretion standard. *Id.*

Turning to the present case, we note that some authority exists that a trial judge may, in an unusual case, disqualify a previously qualified expert witness in the interest of promoting the fairness of the proceedings. *See Paul v. Rawlings Sporting Goods Co.,* 123 F.R.D. 271, 278 (S.D.Ohio 1988), citing *Williams v. TWA, Inc.,* 588 F.Supp. 1037 (W.D.Mo.1984). There is also authority that a prosecuting attorney should not testify in cases which he or she prosecutes because "[a] jury naturally gives to the evidence of the prosecuting attorney far greater weight than to that of the ordinary witness." *See Robinson,* 32 F.2d at 510; *see also United States v. Treadway,* 445 F.Supp. 959, 962 (N.D.Tex.1978). However, there is no direct authority cited by the defense requiring a military judge to disqualify a prosecution expert witness on the basis that he or she otherwise acted as a *"de facto* prosecutor."

Assuming such authority exists, we are not persuaded that appellant's trial judge abused his discretion in refusing to exercise such power in this case. *See generally United States v. Travers,* 25 MJ 61, 62–63 (CMA 1987) (to find an abuse of discretion, the challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous). The military judge was at the center of the trial and clearly sensitive to the fact that this expert witness' extra-testimonial conduct might unduly prejudice appellant. *See* S. Childress and M. Davis, 1 *Federal Standards of Review* § 4.02 (1992 2d ed.) (recognizing trial judge's superior position in performing Fed.R.Evid. 403 analysis). He immediately stopped the complained of note-passing and formally rebuked trial counsel and the expert

witness for engaging in such disruptions.[2] Finally, he called the members' attention to the impropriety of this expert's conduct and instructed them to consider it against her in evaluating her credibility. *See also United States v. Garcia,* 23 USCMA 403, 406–07, 50 CMR 285, 288–89, (1975).

Turning to appellant's undue-prejudice argument, we find it most unpersuasive for several reasons. First, we have reviewed the trial judge's instructions and conclude that they could not reasonably be construed to favor this witness or the prosecution. ("totally improper"; "entirely inappropriate"; "consider that [she] has shown herself to be biased"; "a mark against her"). Second, the defense requested instructions of this type and made no objection to those given by the trial judge. Third, the prosecution asked the judge to reconsider these instructions because they unduly burdened the presentation of its case. In these circumstances, we must reject, as unjustified, appellant's argument on undue prejudice. *See United States v. Garces,* 32 MJ 345, 349 (CMA 1991).

### PREJUDICIAL ERROR

■ The third issue in this case is whether the military judge erred in failing to grant the defense access to certain materials necessary for the cross-examination of the prosecution's expert, Dr. Cooper. In particular, appellant complains that he was not allowed to see notes written by Dr. Cooper on medical reports she considered in forming her opinions in this case. Also, he complains that he was not given access to these same medical reports relied on by this expert until after she testified in the prosecution's case-in-chief. Finally, he argues that the failure of the trial judge to attach the above notes as an appellate exhibit precludes meaningful appellate review of this issue. We disagree.

Our preliminary concern is whether the failure of the military judge to attach the notes as an appellate exhibit precludes meaningful appellate review. We addressed a

---

2. As a personal observation, I note that, in the future, there may not only be a transcript of a trial, but also a video. With this tool, an appel-late court will be better able to judge the prejudice of incidents like the interruption and note-passing in the instant case.

similar claim in *United States v. Branoff*, 38 MJ 98, 105 (CMA 1993), and rejected it. *See also United States v. Briggs*, 48 MJ 143, 145 (1998). Likewise, in this case, there was no request by the defense that these notes be attached to the record as an appellate exhibit. Moreover, "appellant concedes that the Government's failure to produce the discovery in question does not implicate *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the discovery involved inculpatory, rather than exculpatory, information." Final Brief at 14 n. 9. Finally, we conclude that appellant's claim of error concerning these notes can be resolved without specific knowledge of their content. *See United States v. Branoff, supra.*

Turning to appellant's first claim, he rests his appellate argument for Dr. Cooper's notes exclusively on Mil.R.Evid. 612, which states:

**Rule 612. Writing used to refresh memory**

If a witness uses a writing to refresh his or her memory for the purpose of testifying, either

(1) while testifying, or

(2) before testifying, if the military judge determines it is necessary in the interests of justice, *an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.* If it is claimed that the writing contains privileged information or matters not related to the subject matter of the testimony, the military judge shall examine the writing *in camera,* excise any privileged information or portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be attached to the record of trial as an appellate exhibit. If a writing is not produced or delivered pursuant to order under this rule, the military judge shall make any order justice requires, except that when the prosecution elects not to comply, the order shall be one striking the testimony or, if in discretion of the military judge it is determined that the interests of justice so required, declaring a mistrial. This rule does not preclude disclosure of information required to be disclosed under other provisions of these rules or this Manual.

However, at trial, there was no mention of this evidentiary rule as a legal basis for appellant's request for discovery of these notes. Moreover, the defense did not establish that these notes were used by the prosecution's expert to refresh her memory for purposes of testifying at trial. *See United States v. Jimenez,* 613 F.2d 1373, 1377–78 (5th Cir.1980). Finally, at trial, appellant based his requests for these notes on the witness' status as an expert, and he has not pursued that argument on appeal. *See* Mil. R.Evid. 703, 705; *see also* RCM 701(2)(B). No further consideration of appellant's Mil.R. Evid. 612 argument is warranted in these circumstances.

■ Turning to appellant's second claim, he complains about his belated access to private therapy reports concerning the alleged victim, which were relied upon by the prosecution's expert in fashioning her direct testimony. He contends that the Government's failure to disclose this information prior to trial and the trial judge's delayed discovery order "effectively ambushed [the defense] at trial." Final Brief at 17. He asserts that, "[h]ad the defense had the opportunity to interview the therapist, it could have possibly challenged the admissibility of this information prior to trial or alternately, it could have reshaped its theory of the case." *Id.* We reject his prejudice argument.

We note that the defense was afforded a 30–day continuance prior to its cross-examination of this expert because of the prosecution's delayed discovery conduct. It elected not to call the prosecution expert back to the stand for purposes of cross-examination, although it did ultimately cross-examine her when she was recalled by the prosecution as a rebuttal witness. The belatedly-disclosed therapy reports were not mentioned during this cross-examination; nor was a defense motion made to strike her testimony in its entirety because of these reports. Moreover, other evidence was admitted showing the

victim's post-offense behavior, which was similar to that described in the therapy reports relied upon by Dr. Cooper. Finally, appellant, in his brief before this Court, has not indicated how his defense would have been altered if he had received these reports earlier. In these circumstances, we see no prejudice. Art. 59(a), UCMJ, 10 USC § 859(a).

The decision of the United States Army Court of Criminal Appeals is affirmed.