# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38954**

————————————

**UNITED STATES**
*Appellee*

v.

**Zakery J. SCHRAM**
Senior Airman (E-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 May 2017

————————————

*Military Judge:* Joshua E. Kastenberg.

*Approved sentence:* Dishonorable discharge, confinement for 5 years, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 27 June 2015 by GCM convened at Davis-Monthan Air Force Base, Arizona.

*For Appellant:* Major Annie W. Morgan, USAF; Frank J. Spinner, Esquire.

*For Appellee:* Lieutenant Colonel Roberto Ramírez, USAF; Captain Matthew L. Tusing, USAF; Gerald R. Bruce, Esquire.

Before MAYBERRY, HARDING, and C. BROWN, *Appellate Military Judges.*

Judge C. BROWN delivered the opinion of the court, in which Senior Judge MAYBERRY and Judge HARDING joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

C. BROWN, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of two specifications of sexual assault

by bodily harm, one specification of abusive sexual contact, one specification of sexual abuse of a child under 16 years old, two specifications of assault consummated by battery, two specifications of adultery, and three specifications of wrongfully providing alcohol to minors in violation of Articles 120, 120b, 128, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 920b, 928, 934. The military judge acquitted Appellant of two specifications of sexual assault by bodily harm, two specifications of sexual abuse of a child under 16 years old, and two specifications of communicating a threat.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowance, and reduction to E-1. The convening authority approved the sentence as adjudged.

On appeal, Appellant raises five allegations of error. The first four errors assert the evidence supporting the majority of his convictions is legally and factually insufficient. The final error alleges the Government's failure to preserve and disclose, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), certain cell phone records. Finding no relief is warranted, we affirm the findings and sentence.

## I. BACKGROUND

Appellant married his first wife in July 2011. Shortly thereafter, Appellant was stationed at Davis-Monthan Air Force Base, and the couple moved to Tucson, Arizona. In February 2012, Appellant's wife left Tucson because their relationship "wasn't working out." The couple ultimately divorced in April 2014. After his spouse left the area, Appellant engaged in several intertwined sexual relationships that were described as abusive and controlling by the females involved.

In April 2012, Appellant began dating EB, who was 16 years old at the time. The couple eventually lived together in Appellant's apartment. During this time, EB attended school at a local beauty academy. Over the course of their two-year relationship, Appellant and EB engaged in consensual vaginal and anal intercourse numerous times. However, on several occasions, Appellant had vaginal intercourse with EB after she told him she did not want to have sex. Some of these sexual assaults, described in detail by EB, were initiated while EB was asleep. Similarly, EB described several instances where Appellant had anal intercourse with her after she told him no and physically resisted him. These events served as the bases for Appellant's two sexual assault convictions. Appellant also provided EB alcohol while she was a minor. While they were living together, Appellant monitored EB's location at all

---

[1] The military judge also dismissed with prejudice an additional specification of wrongfully providing alcohol to a minor.

times, checking her text messages and having her continuously call him to ensure her whereabouts.

In March 2014, Appellant, EB, and MZ, a 19-year-old student at the beauty academy, engaged in a consensual sexual encounter that EB and MZ termed a "threesome." Shortly thereafter, Appellant broke up with EB, and MZ moved in with him. While EB was removing her personal items from Appellant's apartment and in the presence of MZ, Appellant closed a closet door on EB's arm and then grabbed her by both her arms with enough force to cause bruises. Despite the assault, EB returned to live with Appellant after he broke up with MZ. Ultimately, their relationship ended for good following another physical altercation where Appellant pushed EB over a dog fence after she found Appellant in bed with another female.

Over the course of MZ's relationship with Appellant, MZ reported similar controlling behavior by Appellant, to include monitoring her texts and phone calls and putting a GPS tracker on her phone to check her whereabouts. Appellant informed MZ he was not divorcing his spouse because he received extra money from the Air Force for being married. MZ testified that on several occasions she woke to find Appellant having sex with her and although she told him to stop, he said no and held her head to his chest until he ejaculated. She reported similar instances of Appellant having anal intercourse with her after she told him no; however, Appellant was acquitted of all of the sexual offenses alleged by MZ. MZ described physical assaults by Appellant that left bruises on her arms and under her eye and stated Appellant provided her alcohol while she was still a minor, leading to convictions for assault consummated by a batter and providing alcohol to a minor.

While MZ was living with Appellant, her 14-year-old sister, HS, spent a weekend with them. During this weekend, while MZ was asleep on the couch, Appellant took HS's hand and placed it on his penis over his clothes. This event served as the basis for Appellant's conviction for sexual abuse of a child. HS also relayed that Appellant touched her thigh without her permission and asked her lewd questions about her experiences with men; however, Appellant was acquitted of these offenses.

Finally, EB, MZ, and RM, a close friend of MZ, were present at a get together at Appellant's apartment. RM was 19 years old at the time. The three minor females all consumed alcohol provided by Appellant. At some point during the night, Appellant and RM engaged in consensual kissing, and then RM told Appellant to stop because she was not interested in him. Later, Appellant grabbed and squeezed RM's buttocks.

## II. DISCUSSION

### A. Legal and Factual Sufficiency of Evidence

Appellant avers all of the charges and specifications of which he was convicted, except the three specifications involving providing alcohol to a minor, are legally and factually insufficient. He cites credibility of witnesses, conflict between witness testimony, lack of corroboration of the allegations of physical abuse, and failure of the Government to prove Appellant's adultery was service discrediting.

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). In conducting this unique appellate role, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324; *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term "reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001).

### 1. Offenses Involving MZ

Specification 1 of Charge III alleged Appellant committed assault consummated by battery in violation of Article 128, UCMJ, 10 U.S.C. § 928. To sustain a conviction for this offense, the Government was required to prove: (1) that Appellant did bodily harm to MZ by striking her in the head and choking her neck with his hands; and (2) that the bodily harm was done with unlawful force or violence. *See Manual for Courts-Martial, United States, (MCM)*, pt. IV, ¶ 54(b)(2) (2012 ed.).

MZ described in detail an incident where Appellant dumped popcorn on her, threw the bowl at her, hitting her in the stomach with it, pushed her head into a cabinet, and then choked her neck with his hands because he was angry about MZ texting a male friend named GN. She testified GN was an Army member who was about to deploy. The Government called Specialist GN, who corroborated MZ's testimony. MZ also described another incident where Appellant pushed her in the face leaving a bruise under her eye. EB and a former instructor at the beauty academy, HL, testified concerning bruising they observed on MZ while she was at school with them. On cross examination, MZ was confronted with prior inconsistent statements she made to the Air Force Office of Special Investigations (AFOSI) during their investigation of Appellant. She was similarly challenged concerning conflicts between her testimony and other witness testimony.

MZ's testimony as corroborated by other witness testimony satisfies the elements of this offense, and there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that Appellant is guilty of assault consummated by battery against MZ. The evidence is, therefore, legally sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

We turn to Specification 1 of Charge IV, which alleged Appellant committed adultery with MZ in violation of Article 134, UCMJ, 10 U.S.C. § 934. To sustain a conviction for this offense, the Government was required to prove: (1) that Appellant wrongfully had sexual intercourse with MZ; (2) that, at the time, Appellant or MZ was married to someone else; and (3) that, under the circumstances, the conduct of Appellant was of a nature to bring discredit upon the armed forces. *MCM,* pt. IV, ¶ 62(b) (2012 ed.).

The first two elements are not in dispute here, with ample evidence that Appellant had sexual intercourse with MZ while he remained married. Instead, Appellant focuses us on the final element—whether this adulterous activity while physically separated from his spouse was of a nature to bring discredit upon the armed forces. The *MCM* provides guidance concerning this element:

> *Conduct prejudicial to good order and discipline or of a nature to bring discredit upon the armed forces.* To constitute an offense under the UCMJ, the adulterous conduct must either be directly prejudicial to good order and discipline or service discrediting. . . . Discredit means to injure the reputation of the armed forces and includes adulterous conduct that has a tendency, because of its open or notorious nature, to bring the service into disrepute, make it subject to public ridicule, or lower it in public

esteem. While adulterous conduct that is private and discreet in nature may not be service discrediting by this standard, under the circumstances, it may be determined to be conduct prejudicial to good order and discipline. Commanders should consider all relevant circumstances, including but not limited to the following factors, when determining whether adulterous acts are prejudicial to good order and discipline or are of a nature to bring discredit upon the armed forces:

(a) The accused's marital status, military rank, grade, or position;

(b) The co-actor's marital status, military rank, grade, and position, or relationship to the armed forces;

(c) The military status of the accused's spouse or the spouse of co-actor, or their relationship to the armed forces;

(d) The impact, if any, of the adulterous relationship on the ability of the accused, the co-actor, or the spouse of either to perform their duties in support of the armed forces;

(e) The misuse, if any, of government time and resources to facilitate the commission of the conduct;

(f) Whether the conduct persisted despite counseling or orders to desist; the flagrancy of the conduct, such as whether any notoriety ensued; and whether the adulterous act was accompanied by other violations of the UCMJ;

(g) The negative impact of the conduct on the units or organizations of the accused, the co-actor or the spouse of either of them, such as a detrimental effect on unit or organization morale, teamwork, and efficiency;

(h) Whether the accused or co-actor was legally separated; and

(i) Whether the adulterous misconduct involves an ongoing or recent relationship or is remote in time.

*MCM,* pt. IV, ¶ 62(c)(2) (2012 ed.).

There is no requirement that the Government show actual damage to the reputation of the military. *United States v. Mead*, 63 M.J. 724, 728 (A.F. Ct. Crim. App. 2006); *cf. United States v. Hartwig*, 39 M.J. 125, 130 (C.M.A. 1994) (holding that in context of Article 133, UCMJ, 10 U.S.C. § 933, prosecution need not prove actual damage to the reputation of the military). Rather, the test is whether the appellant's offense had a "tendency" to bring discredit upon

the service. *United States v. Saunders*, 59 M.J. 1, 11 (C.A.A.F. 2003); *Hartwig,* 39 M.J. at 130.

The trier of fact must determine beyond a reasonable doubt that the conduct alleged actually occurred and must also evaluate the nature of the conduct and determine beyond a reasonable doubt that Appellant's conduct would tend to bring the service into disrepute if it were known. *See Saunders*, 59 M.J. at 11.

> In general, the government is not required to present evidence that anyone witnessed or became aware of the conduct. Nor is the government required to specifically articulate how the conduct is service discrediting. Rather, the government's obligation is to introduce sufficient evidence of the accused's allegedly service discrediting conduct to support a conviction. . . .

> Whether conduct is of a "nature" to bring discredit upon the armed forces is a question that depends on the facts and circumstances of the conduct, which includes facts regarding the setting as well as the extent to which Appellant's conduct is known to others. The trier of fact must consider all the circumstances, but such facts—including the fact that the conduct may have been wholly private—do not mandate a particular result unless no rational trier of fact could conclude that the conduct was of a "nature" to bring discredit upon the armed forces.

*United States v. Phillips*, 70 M.J. 161, 166 (C.A.A.F. 2011).

The Government presented evidence showing that the adultery did not remain a private affair between the parties. NS, a student at the beauty academy, testified that the affair between Appellant and MZ was well known to the students of the beauty academy. MZ testified that Appellant told her he was not getting a divorce because he was receiving extra money from the Air Force for being married. She testified that she, EB, and Appellant engaged in a consensual "threesome" while Appellant was still married. MZ also stated that Appellant got her pregnant but refused to acknowledge paternity because he did not want the Air Force to find out about it. Finally, Appellant's ex-wife testified that although she did not feel she was a "victim" of adultery, Appellant had only sent her $300 on three or four occasions after they separated.

Based upon the witnesses' testimony, we find that a rational trier of fact could reason that Appellant's adulterous conduct would have "a tendency . . . to bring the service into disrepute or . . . lower it in public esteem." *MCM*, pt. IV, ¶ 62(c)(2). Thus, a reasonable factfinder could have found all the essential elements of adultery beyond a reasonable doubt, making the evidence legally

sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

### 2. Offenses Involving EB

Specifications 3 and 4 of Charge I alleged Appellant committed sexual assault by causing bodily harm in violation of Article 120, UCMJ, 10 U.S.C. § 920. To sustain a conviction for sexual assault, the Government was required to prove: (1) that Appellant committed a sexual act upon EB, to wit: penetrating EB's vulva (Specification 3) and EB's anus (Specification 4) with his penis; (2) that Appellant did so by causing bodily harm to EB to wit: penetrating her vulva (Specification 3) and anus (Specification 4) with his penis; and (3) that Appellant did so without the consent of EB. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, 3-45-14 (10 Sep. 2014).

EB testified at length concerning the multiple times Appellant had vaginal and anal sex with her without her consent. She described several occasions where she told Appellant "no" while physically resisting him and that vaginal intercourse occurred despite her physical and verbal resistance, including instances where she awoke to Appellant having vaginal intercourse with her.

Similarly, EB described instances of non-consensual anal sex where Appellant engaged in consensual vaginal intercourse with her and then tried to initiate anal intercourse. She stated she would tell him no and that she did not want to do it because it would hurt, but he would have anal sex with her anyway. This included an occasion where she kept saying no and then started crying due to the pain of the anal intercourse, but Appellant was not deterred, telling her to "tough through it."

Like most sexual assault cases, the evidence in this case was not without conflict, as trial defense counsel confronted EB with prior inconsistent statements she made to AFOSI during their investigation and inconsistencies between her testimony and the testimony of the other Government witnesses. Finally, trial defense counsel highlighted EB's motive to lie, including that Appellant broke up with her and immediately had MZ move into his apartment.

Noting the term "reasonable doubt" does not mean that the evidence must be free from conflict, *Lips*, 22 M.J. at 684, and drawing every reasonable inference from the evidence of record in favor of the prosecution, *Barner*, 56 M.J. at 134, we find there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the Appellant is guilty of both specifications of sexual assault involving EB. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

We turn to Specification 2 of Charge III, which alleged Appellant committed assault consummated by battery in violation of Article 128, UCMJ, 10 U.S.C. § 928. To sustain a conviction for this offense the Government was required to prove: (1) that Appellant did bodily harm to EB by pushing her body with his hands and grabbing her arms with his hands; and (2) that the bodily harm was done with unlawful force or violence. *See MCM*, pt. IV, ¶ 54(b)(2).

EB testified that after Appellant broke up with her, he told her to retrieve her belongings from his apartment. EB and Appellant argued in MZ's presence and he closed a closet door on EB's arm. Appellant then grabbed EB's arms hard enough to cause bruising. EB also described another incident where Appellant grabbed her arms and pushed her over a dog fence after she caught him in bed with another female. EB's bruising was corroborated by other witness testimony. Finally, pictures of EB's bruising were admitted into evidence, although the timing of the pictures was disputed by Appellant.

We find the evidence supporting the assault consummated by battery is legally sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

Specification 2 of Charge IV alleged Appellant committed adultery with EB in violation of Article 134, UCMJ, 10 U.S.C. § 934. The elements for this offense are the same as discussed above. As with the adultery specification involving MZ, the only issue for the court to resolve is whether Appellant's adulterous conduct with EB was service discrediting. Witness testimony confirmed Appellant's relationship with EB was a topic of discussion and rumor at the beauty school. EB was the other participant in the consensual "threesome" with Appellant and MZ while Appellant was married. Appellant maintained his marriage during his two-year adulterous relationship with EB for his own financial benefit. We find the evidence supporting Appellant's adultery conviction to be legally sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

### 3. Offense Involving HS

Specification 1 of Charge II alleged Appellant committed sexual abuse of a child under 16 years of age in violation of Article 120b, UCMJ, 10 U.S.C. § 920b. To sustain a conviction for this offense the Government was required to

prove: (1) that Appellant committed a lewd act[2] upon HS to wit: Appellant placed HS's hand on Appellants penis through clothing; and (2) that at the time, HS had not attained the age of 16 years. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, 3-45b-3 (10 Sep. 2014).

HS testified that while her sister, MZ, was residing with Appellant, she spent a weekend at Appellant's apartment. HS, who was 14 years old at the time, stated while her sister was sleeping on the couch in Appellant's apartment, Appellant had her smoke out of his hookah which made her dizzy. Then, he pulled her close to him in a chair near the couch. He attempted to kiss her and later pulled her hand to touch his penis above his clothing. HS stated Appellant held her hand on his "hard" penis for five to ten seconds. MZ woke shortly thereafter, and they left the room.

Similar to the majority of the testimony in this case, HS's testimony was not without conflict. MZ testified that when she awoke she saw Appellant kissing HS's neck; however, HS described Appellant trying to kiss her, but never actually doing so because she moved her head away from him. Trial defense counsel confronted HS with inconsistencies between her testimony and a statement she provided to AFOSI during their investigation, including whether her sister fell asleep in the bathroom or on the floor near the bathroom and whether Appellant carried MZ into the bedroom following the alleged touching.

In addition to these inconsistencies, the military judge dismissed with prejudice a specification that alleged Appellant provided alcohol to HS on the night of the alleged sexual abuse. The specification was dismissed as a remedy for HS talking to another witness, TB, before TB testified. During cross examination, HS stated she told TB about Appellant placing HS's hand on his penis, but when TB testified, she denied this conversation happened. The evening after HS testified, and before TB testified the following morning, HS called TB and told her not to say either of them had ever drank alcohol. TB testified that

---

[2] Article 120b, UCMJ, 10 U.S.C. § 920b, states a "lewd act" includes any "sexual contact" with a child. "Sexual contact" is defined as:

"(A) touching, or causing another person to touch, either directly or through the clothing, the genitalia, anus, groin, breast, inner thigh, or buttocks of any person, with an intent to abuse, humiliate or degrade any person; or

(B) any touching, or causing another person to touch, either directly or through the clothing, any body part of any person, if done with an intent to arouse or gratify the sexual desire of any person."

*MCM*, pt. IV ¶ 45b.a.(h)(5) and 45.a.(g)(2) (2012 ed.).

HS did not tell her about HS's testimony and that the call did not affect her testimony; however, it did make TB realize her friend would lie.

As a remedy for HS talking to TB in violation of his instructions, the military judge dismissed Specification 5 of Additional Charge II which alleged Appellant provided alcohol to HS. The military judge also stated he would consider HS's actions with regards to assessing the credibility of HS's own testimony and also consider that TB gave an opinion as to HS's willingness to lie and her character for untruthfulness, but denied trial defense counsel's motion for mistrial concerning all charges relating to HS.[3]

While we find HS's conduct in contacting TB prior to TB's testimony troubling, the military judge was in the best position to weigh the credibility of her testimony, especially considering the remedy he fashioned for HS's actions. Thus, we find there is sufficient evidence to convince a rational trier of fact beyond a reasonable doubt that the Appellant is guilty of sexual abuse of HS, thus the evidence is legally sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

### 4. Offense Involving RM

The Specification of Additional Charge I alleged Appellant committed abusive sexual contact with RM. To sustain a conviction for this offense, the Government was required to prove: (1) that Appellant committed sexual contact[4] upon RM, to wit: touching RM's buttocks with his hand; (2) that Appellant did so by causing bodily harm to RM, to wit: touching RM's buttocks with his hand; and (3) that Appellant did so without the consent of RM. *See* Department of the Army Pamphlet 27-9, *Military Judges' Benchbook*, 3-45-16 (10 Sep. 2014)

RM testified that she attended a small party with Appellant, EB, and MZ at Appellant's apartment. Appellant, EB, MZ, and RM all drank alcohol and watched television. At some point during the evening, Appellant and RM engaged in consensual kissing for about three seconds, and then RM told Appellant she was not comfortable "doing that." Appellant then began to touch RM's thigh and she pushed him away. After Appellant touched her thigh for a third time, she went over to play beer pong with EB and MZ. Appellant then came over to where RM had moved and squeezed her buttocks.

---

[3] Though not raised as an issue, we find the military judge did not abuse his discretion by denying the motion for a mistrial. *See United States v. Meghdadi*, 60 M.J. 438 (C.A.A.F. 2005); *United States v. Barron*, 52 M.J. 1 (C.A.A.F. 1999).

[4] Previously defined at footnote 2 above.

Again, the evidence is not without conflict. Both MZ and EB testified they saw Appellant and RM kiss. MZ said RM pulled away after the kiss, and EB testified Appellant may have accidentally stumbled into RM during the evening. Trial defense counsel confronted RM with a minor inconsistency about how many times Appellant touched her thigh. He also elicited that Appellant was very drunk by the end of the evening, threw up at one point, and later passed out in the bedroom.

Trial defense counsel argued that Appellant had a reasonable mistake of fact as to whether RM consented to the touching and also that Appellant's level of intoxication prevented him from forming the specific intent necessary for the touching to have been committed with an intent to gratify Appellant's sexual desire. The mistake of fact claim is countered by the testimony of RM, who stated she told Appellant she was "not interested" in him, pushed his hands away from her when he touched her thigh, and moved away from him. Similarly, testimony by RM and MZ indicated the sexual contact with RM occurred early in the evening before Appellant was heavily intoxicated.

We presume the military judge applied the law correctly to any potential mistake of fact as to consent and whether Appellant's voluntary intoxication served to negate an element of the offense. *Robbins*, 52 M.J. at 457; *United States v. Bridges*, 66 M.J. 246, 248 (C.A.A.F. 2008); *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007); *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997)). Again, noting the term "reasonable doubt" does not mean that the evidence must be free from conflict, *Lips*, 22 M.J. at 684, and drawing every reasonable inference from the evidence of record in favor of the prosecution, *Barner*, 56 M.J. at 134, we find the evidence legally sufficient. Furthermore, after our independent review of the record and making allowances for not personally observing the witnesses, we are ourselves convinced beyond a reasonable doubt.

## B. *Brady* Violation

During the course of their investigation, AFOSI asked and received consent to examine EB's cell phone. The phone was in AFOSI's possession as of January 2015. AFOSI returned the phone to EB's father in April 2015, and EB subsequently sold the phone back to her cell phone provider when she got a new device resulting in the loss or destruction of all data on the phone. Trial defense counsel filed a general discovery request in October 2014 seeking, among other things, evidence favorable to the Defense pursuant to Rule for Courts-Martial (R.C.M.) 701(a)(6).[5] In February 2015, trial defense counsel requested trial

---

[5] Rule for Courts-Martial 701(a)(6) states:

counsel make EB's phone available for inspection because the phone contained photographs of EB's injuries. This discovery request was submitted via email while the phone was still in AFOSI's possession. The Government responded that they were awaiting a consent form and would provide a report once the phone was "ripped." The Government provided trial defense counsel with the "Cellebrite" extraction report from EB's phone in May 2015. The extraction contained photographs of bruising on EB allegedly caused by Appellant, but did not contain text messages between EB and MZ or EB and Appellant.

Appellant asserts that the phone contained texts messages between EB and Appellant which might have been used to impeach EB on cross-examination. Appellant also claims the phone contained potential exculpatory text messages between EB and MZ, although at trial, Appellant's counsel argued the text messages were impeachment material. Appellant asserts the military judge abused his discretion when he denied Appellant's motion at trial to dismiss all charges and specifications related to MZ and EB as a remedy for the alleged discovery violations. He asks this court to set aside and dismiss these charges while authorizing a rehearing.

After hearing argument on the issue, the military judge issued detailed finding of facts. The military judge denied the Defense motion to dismiss charges but did suppress the photographs of EB's injuries taken from the phone. In his ruling, the military judge noted there was no evidence the Government acted in bad faith and that Appellant conceded the text messages were impeachment material rather than exculpatory evidence. The military judge ultimately concluded the Government's failure to preserve impeachment evidence did not deny Appellant his due process right to a fair trial when coupled with the remedy of suppressing photographs taken from the phone.

We review a military judge's decision on a request for discovery for abuse of discretion. *United States v. Morris*, 52 M.J. 193, 198 (C.A.A.F. 1999). "A military judge abuses his discretion when his findings of fact are clearly erroneous, when he is incorrect about the applicable law, or when he improperly applies the law." *United States v. Roberts*, 59 M.J. 323, 326 (C.A.A.F. 2004).

---

*Evidence favorable to the defense*. The trial counsel shall, as soon as practicable, disclose to the defense the existence of evidence known to the trial counsel which reasonably tends to:

    (A) Negate the guilt of the accused of an offense charged;

    (B) Reduce the degree of guilt of the accused of an offense charged; or

    (C) Reduce the punishment.

The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady*, 373 U.S. at 87; *United States v. Eshalomi*, 23 M.J. 12, 21 (C.M.A. 1986). The same rule applies to impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 153 (1972).

A military accused has the right to obtain favorable evidence under Article 46, UCMJ, 10 U.S.C. § 846, as implemented by R.C.M. 701–703. The Court of Appeals for the Armed Forces (CAAF) has held that Article 46 and its implementing rules provide greater statutory discovery rights to an accused than does his constitutional right to due process. *Roberts*, 59 M.J. at 327; *see United States v. Hart*, 29 M.J. 407, 409–10 (C.M.A. 1990). As a result, the CAAF has established two categories of disclosure error: (1) cases in which the defense either did not make a discovery request or made only a general request for discovery; and (2) cases in which the defense made a specific request for the undisclosed information. *Roberts*, 59 M.J. at 326–27. For cases in the first category, we apply the harmless error standard. *Hart*, 29 M.J. at 410; *United States v. Behenna*, 71 M.J. 228, 238 (C.A.A.F. 2012). For cases in the second category, we apply the heightened constitutional harmless beyond a reasonable doubt standard. *Roberts*, 59 M.J. at 327; *Hart*, 29 M.J. at 410.

Failing to disclose requested material favorable to the defense is not harmless beyond a reasonable doubt if the undisclosed evidence might have affected the outcome of the trial. *See Hart*, 29 M.J. at 409. "Our review of discovery/disclosure issues utilizes a two-step analysis: first, we determine whether the information or evidence at issue was subject to disclosure or discovery; second, if there was nondisclosure of such information, we test the effect of that nondisclosure on the appellant's trial." *Roberts*, 59 M.J. at 325.

The case at hand involves evidence that the Government had in their possession but did not preserve. In *California v. Trombetta*, 467 U.S. 479, 489 (1984), the Supreme Court provided a two-part test for evaluating materiality of destroyed or lost evidence: To meet the standard of constitutional materiality, evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

In *United States v. Kern*, 22 M.J. 49 (C.M.A. 1986), our superior court stated *Trombetta* satisfies both constitutional and military standards of due process and should therefore be applicable to courts-martial.

> The Government has a duty to use good faith and due diligence to preserve and protect evidence and make it available to an accused. However, where the evidence is not "apparently" exculpatory, the burden is upon an accused to show that the evidence possessed an exculpatory value that was or should have been apparent to the Government before it was lost or destroyed and that he is unable to obtain comparable evidence by other reasonably available means. To require the Government to prove that the lost evidence was not exculpatory would be an insurmountable burden as the peculiar value of the otherwise apparently inculpatory evidence would be solely within the knowledge of the accused. . . .

> Unlike the remedial action required where evidence is withheld from the defense, *Brady*, [373 U.S. at 85, 87], the Supreme Court has fashioned no remedy where apparently exculpatory evidence is lost or destroyed and no comparable evidence is available to the accused. *Trombetta*, [467 U.S. at 486–87]. In the event evidence of apparently exculpatory value is lost or destroyed and the accused has been unable to obtain comparable evidence, then the trial judge may fashion such remedies as are appropriate to protect the fundamental rights of the accused. *United States v. Loud Hawk*, 628 F.2d 1139, 1151 (9th Cir. 1979) (Kennedy, J., concurring), *cert. denied*, 445 U.S. 917, 100 S. Ct. 1279, 63 L. Ed. 2d 602 (1980); *see also United States v. Grammatikos*, 633 F.2d 1013 (2d Cir. 1980). Determination of an appropriate remedy is left to the sound discretion of the trial judge.

*Kern*, 22 M.J. at 51–52.

Neither the general discovery request from October 2014 nor the February 2015 email request to "inspect" the phone specifically sought the evidence Appellant now seeks from EB's phone — text messages between EB and MZ and between EB and Appellant. At trial, Appellant conceded the evidence sought was potential impeachment evidence rather than exculpatory evidence. On appeal, Appellant claims the failure of the Government to preserve the evidence from EB's phone caused the loss of "potentially" exculpatory text messages between MZ and EB. Similarly, the text messages between EB and Appellant were destroyed and those messages "could" have been used to impeach EB at trial. The contents of EB's cell phone are speculative at best, and Appellant has not demonstrated the lost evidence is exculpatory. There was no shortage of impeachment material available and used at trial by Appellant's trial defense counsel. While we find the evidence from EB's phone should have been dis-

closed, the non-disclosure of this "potential" impeachment material was harmless. The military judge fashioned a remedy appropriate to the facts of the case. Here, the Defense sought access to the photographs taken from EB's phone; when that evidence was destroyed, the military judge refused to let the Government admit copies of the evidence at trial. We find no abuse of discretion.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court