# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 39465**

———————————

**UNITED STATES**
*Appellee*

v.

**John W. BRADDOCK**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 29 October 2019

———————————

*Military Judge:* Donald R. Eller, Jr. (arraignment); Jefferson B. Brown

*Approved sentence:* Dishonorable discharge, confinement for 30 months, and reduction to E-1. Sentence adjudged 17 January 2018 by GCM convened at Scott Air Force Base, Illinois.

*For Appellant:* Major Dustin J. Weisman, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Major Amanda L.K. Linares, USAF; Mary Ellen Payne, Esquire.

Before MINK, LEWIS, and D. JOHNSON, *Appellate Military Judges.*

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge MINK and Judge LEWIS joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

D. JOHNSON, Judge:

A general court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas, of one charge and two specifications of attempted sexual abuse of a child,[1] in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.[2] The military judge also convicted Appellant, contrary to his plea, of one specification of attempted sexual assault of a child, in violation of Article 80, UCMJ. Appellant was sentenced to a dishonorable discharge, confinement for 30 months, forfeiture of all pay and allowances, and reduction to the grade of E-1.[3] All of the adjudged and mandatory forfeitures were deferred until action. The convening authority ultimately waived the mandatory forfeitures for the benefit of Appellant's spouse and dependent children, and approved only that portion of the sentence that included the dishonorable discharge, confinement for 30 months, and reduction to E-1.[4]

Appellant raises two issues on appeal: (1) whether the evidence was legally and factually sufficient to support his conviction for attempted sexual assault of a child[5] and (2) whether the attempted sexual assault of a child specification states an offense because the Government did not include the overt act in the drafted specification.[6] This second issue warrants no further dis-

---

[1] Appellant pleaded guilty to the specification of attempted sexual abuse of a child by indecent communication and guilty by exceptions and substitutions to the specification of attempted sexual abuse of a child by indecent exposure.

[2] All references to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial*, *United States* (2016 ed.).

[3] The military judge recommended deferment of the reduction in rank and total forfeitures until action and, upon action, a waiver of automatic forfeitures for the maximum available time.

[4] We note that the convening authority's memorandum dated 1 February 2018, denying Appellant's request for deferment of the reduction in rank, failed to articulate the reasons for the denial as required by R.C.M. 1101(c)(3). *See United States v. Jalos*, No. ACM 39138, 2017 CCA LEXIS 607, at *5–6 (A.F. Ct. Crim. App. 5 Sep. 2017) (unpub. op.) (citations omitted). However, our review of the record of trial reveals no colorable showing of possible prejudice as a result of the convening authority's error, *see id.* at *6–7, and we conclude that no relief is warranted.

[5] The language to Appellant's Assignment of Error (AOE) has been reworded.

[6] Appellant submits this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

cussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We find no prejudicial error and affirm.

## I. BACKGROUND

On 16 July 2017, Appellant discovered an advertisement on the Whisper application entitled "F/on base looking for someone to kick it with HMU."[7] Appellant responded to the advertisement and began a conversation with an individual who identified herself as a 14-year-old dependent child named "Courtney" who lived with her mother on Scott Air Force Base (AFB) in a housing development referred to as Patriots Landing.[8] Unbeknownst to Appellant, "Courtney" was in fact Special Agent MD with the Air Force Office of Special Investigations (AFOSI), who was pretending to be "Courtney" as part of an Internet Crimes Against Children (ICAC) undercover law enforcement operation.

Within one hour of messaging Appellant first raised the topic of sex after "Courtney" asked, "what ur looking for," and Appellant responded, "I like sex Lol." By this time in the conversation, "Courtney" had told Appellant twice that she was 14 years old. Appellant was also the first person to propose meeting in person, by responding they could have "chilled there naked lol" after "Courtney" mentioned her mom would not be home until the next day.

The conversation continued for a few more days and Appellant's texts became more sexually graphic including Appellant sending a picture of his naked genitalia and descriptions of what sexual acts Appellant wanted to do to "Courtney" and have "Courtney" do to him.[9]

Appellant and "Courtney" arranged to meet at "Courtney's" on base residence on 20 July 2017. However, Appellant had car trouble and the meeting was moved to 21 July. On 21 July after picking up food for "Courtney" at her request, Appellant drove to "Courtney's" house in his uniform with his blouse removed. After driving through the cul-de-sac where the house was located

---

[7] According to Air Force Office of Special Investigations (AFOSI) Special Agent MD, Whisper is the third party application that allows people to anonymously post information and message privately; "F/" means female, and "HMU" means hit me up. This opinion quotes emails and other online communications as they appear in prosecution exhibits and without correction.

[8] "Courtney" did not identify herself by name until Appellant and "Courtney" began texting that same day on the Google Voice application.

[9] At this point, Appellant and "Courtney" had switched from the Whisper application to Google Voice.

three times, Appellant stopped his vehicle on the street at the side of the house, left the engine running, his seatbelt on, and vehicle in drive. After texting "Courtney" to come outside but not leaving his vehicle, Appellant was apprehended by AFOSI. AFOSI did not find any condoms or lubricants in Appellant's vehicle, just the food order "Courtney" requested. A subsequent search of Appellant's phone revealed the latest texts Appellant and "Courtney" exchanged. No texts of a sexual nature were exchanged on 21 July 2017.

## II. DISCUSSION

Appellant challenges the legal and factual sufficiency of the evidence supporting his conviction of attempted sexual assault of a child. He alleges the Government: (1) put on insufficient evidence that Appellant had the specific intent to commit the sexual assault and, (2) did not establish that Appellant took a substantial step that apparently tended to effect commission of the offense. We are not persuaded and find his conviction both legally and factually sufficient.

## A. Additional Background

Within approximately the first hour of chatting on the Google Voice application on 16 July 2017, Appellant described in sexually graphic detail what he would do to "Courtney" and have "Courtney" do to him if they met in person. When "Courtney" asked Appellant whether he would "protect" himself, Appellant told her he was "fixed."[10] However, "Courtney" responded she would feel better if he used protection anyway. After Appellant asked for "Courtney's" address twice, she suggested they meet at the Base Exchange (BX) after her "sitter" left so she could make sure he was "real." After further conversation, Appellant stated he "might stay the night No rubbers though." After more sexually graphic conversation about the sexual activities they would engage in, the following conversation occurred:

> [Appellant]: So your ready to be used like a sl[*]t
>
> [Courtney]: I wouldn't use those terms but u better not hurt me
>
> [Appellant]: Won't hurt you but I will be honest I'm serious about F[**]king all three holes and having you s[*]ck me clean.
>
> [Courtney]: Yes sir

---

[10] When Appellant stated he had been "fixed," Special Agent MD assumed he had a vasectomy. Special Agent MD testified "protect" was in reference to Appellant wearing a condom.

[Appellant]: I'm sure your the cops

[Courtney]: Well then don't come I mean just tell me n I'll goto bed

[Appellant]: I'm going to c[*]m in you

[Courtney]: How do I know you're clean and are going to disease me

[Appellant]: Trust I guess

After telling Appellant what streets she lived near and agreeing to meet him at the corner in case he was a "creep," Appellant responded, "Whatever I'm all good maybe next time." After more conversation about having sex, the following conversation occurred:

[Courtney]: Either u come tonight or we forget it

[Appellant]: Ok

[Appellant]: I will just let your mom know

[Courtney]: See I knew u were just pulling my leg

[Courtney]: I'm sorry

[Appellant]: Naw see this is how it is going to work your my sl[*]t or I tell your mom

[Courtney]: What?

[Appellant]: Just what I said

After asking when "Courtney" had free time and whether her mother went home for lunch, Appellant requested "Courtney" send him a picture of her in panties. The conversation ended just after midnight on 17 July 2017. Later that morning, Appellant contacted "Courtney" first. More sexually graphic conversation occurred and then ceased for the day.

On 18 July 2017, "Courtney" attempted to initiate a conversation, but Appellant did not reply until the next day, 19 July, texting that he had been "busy." Appellant and "Courtney" then agreed to meet the next day, 20 July, "about 11" at the parking lot near the BX. However, Appellant then stated he was in "Courtney's" neighborhood. After "Courtney" told Appellant he "was creeping her out," Appellant stated that he was hoping she would be happier about it and want to meet. After reminding Appellant they were not supposed to meet until the next day, Appellant responded, "I'm horny now" and later "I super horny." At the time the conversation was ongoing, Special Agent MD and a female agent, Special Agent SW, were approximately five hours away

from Scott AFB working another case. Using the excuse that the babysitter was in the house and would not leave, "Courtney" asked Appellant to call.

While Appellant was texting, Special Agent MD had Special Agent CG, who was on Scott AFB, drive to Patriots Landing and look for a car that seemed out of place and driving around because at that point, AFOSI had not identified Appellant. AFOSI identified Appellant from his license plate and determined Appellant lived off base and not in Patriots Landing.

Special Agent SW spoke with Appellant on the phone pretending to be "Courtney." During that conversation Appellant said he wanted to meet, but "Courtney" responded she could not meet at that time because her babysitter was not leaving. During the conversation on the phone, Appellant told "Courtney" he wanted her naked and detailed what sexual act he wanted "Courtney" to perform on him. They ended the phone call with Appellant and "Courtney" agreeing to meet the next day, 20 July 2017. More texting occurred after the phone call and Appellant offered to meet at 1030 the next day.

The next day, on 20 July 2017, "Courtney" texted Appellant that her mom had left for work. After responding he had car trouble, Appellant agreed to meet "Courtney" the next day, 21 July, at 1030. After describing how he wanted "Courtney" positioned, and telling her he wanted her naked, the following conversation occurred:

> [Appellant]: I'm f[**]king all three holes right
>
> [Appellant]: Mouth p[***]y and a[**]?
>
> [Appellant]: Go hang out with your friend take a pic of you in your [bathing] suit for me
>
> [Courtney]: She is on her way here and if you want but u better bring lubes
>
> [Appellant]: Your either brave or naïve
>
> [Courtney]: Does it hurt??
>
> [Courtney]: I mean shouldn't we do that…
>
> [Courtney]: Just bring lubes n I can try but if you don't then we aren't
>
> [Courtney]: N if it hurts too bad u better stop
>
> [Appellant]: Ok

When Appellant did not arrive as planned on 21 July 2017, "Courtney" texted Appellant. After about another hour, "Courtney" texted she was getting hungry. At 1412[11] Appellant texted "Hey where are you" followed by "Got hung up in a meeting." After responding that she was at home, hungry and waiting, Appellant asked, "Baby sitter?" "Courtney" then asked Appellant to get her some food and told Appellant that "No she is not here." Appellant agreed to pick up a cheeseburger, fries and a drink.

Appellant then stated "Omw" and "Meet me outside." "Courtney" responded that she was not coming outside "with what I'm wearing" and Appellant told her to put some clothes on. Appellant drove through the cul-de-sac where AFOSI had staged "Courtney's" house very slowly and then drove away. Appellant then drove through the cul-de-sac a second time and Appellant told "Courtney" to go to a window. Special Agent SW who was in the house with Special Agent MD, went to a higher elevated window and waved. On the third time through the cul-de-sac Appellant nodded at Special Agent SW who was waving out the window and continued to drive. Appellant drove to the road parallel to the side of the house and stopped, but did not get out of his vehicle. Appellant again told "Courtney" to put some clothes on, and to hurry or he was leaving. Appellant was stopped for about two minutes on the road to the side of the house when AFOSI apprehended him. Appellant was sitting in his vehicle, with the engine running and the vehicle in drive; Appellant's seatbelt was buckled and he was not wearing his uniform blouse. AFOSI found a phone in Appellant's hands and the food order "Courtney" had requested in the front seat of the vehicle. AFOSI did not find any condoms or lubricants in the vehicle.

A subsequent search of Appellant's phone using his Google account, timeline, and map revealed that Appellant was in Patriots Landing on 19 July 2017, the day Special Agents MD and SW were not at Scott AFB. The only text messages on the phone were the "last two or three."

**B. Law**

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted). The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prose-

---

[11] This time is from the Google Voice application chat log which is in Eastern time; Scott AFB is in the Central time zone.

cution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "Beyond a reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986) (citation omitted).

The elements of attempted sexual assault of a child as alleged in Specification 1 of the Charge are: (1) At or near Scott Air Force Base, IL, on or about 21 July 2017, Appellant did a certain overt act; (2) that the act was done with the specific intent to commit a sexual act upon "Courtney" a person whom he believed to be a child who had attained the age of 12 years, but had not attained the age of 16 years to wit: penetrating Courtney's mouth, vulva and anus with his penis; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the offense of sexual assault of a child. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶¶ 4.b and 45b.b.(3)(a). The law pertaining to the second and third elements warrants further explanation.

Regarding the second element, military judges instruct court members that "direct evidence of intent is often unavailable. The accused's intent, however, may be proved by circumstantial evidence. In deciding this issue, you must consider all relevant facts and circumstances."[12] This is consistent with this court's precedent. When discussing intent, this court noted in *United States v. Polk*, 48 C.M.R. 993, 996 (A.F.C.M.R. 1974), "intent must be in-

---

[12] *Military Judges Benchbook*, Dept. of the Army Pamphlet 27–9 at 1077 (10 September 2014).

ferred from all of the circumstantial evidence surrounding the offenses, that is from the acts done and the things said at the time." *Cf. United States v. Webb*, 38 M.J. 62, 69 (C.M.A.1993) (in case of housebreaking with intent to "peep," intent may be inferred from totality of circumstances to include "nature, time, or place of" appellant's "acts before and during" the crime alleged) (quoting *Goldman v. Anderson*, 625 F.2d 135, 137 (6th Cir. 1980)). "Intent is a state of mind difficult of proof by direct evidence. It may, however, be established by circumstantial evidence and by inferences reasonably to be drawn from the conduct of the defendant and from all the attendant circumstances in the light of human behavior and experience." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992) (quoting *State v. Erving*, 346 N.W.2d 833, 836 (Iowa 1984)).

The third element requires that the overt act amount to more than mere preparation. Military courts interpret this third element as requiring that the accused take a "substantial step" towards commission of the crime. *United States v. Jones*, 37 M.J. 459, 461 (C.M.A. 1993) (citing Article 80, UCMJ, 10 U.S.C. § 880; *United States v. Schoof*, 37 M.J. 96, 102 (C.M.A. 1993)). To constitute a substantial step, the overt act must amount to "more than mere preparation" and "unequivocally demonstrat[e] that the crime will take place unless interrupted by independent circumstances." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (internal cite omitted) (internal quotation marks omitted). "A substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Byrd*, 24 M.J. 286, 290 (C.M.A. 1987) (internal quotations omitted). However, the explanation section of Article 80, UCMJ, states that "[t]he overt act need not be the last act essential to the consummation of the offense." 2016 *MCM*, pt. IV, ¶ 4.c.(2). *See United States v. Thomas,* 32 C.M.R. 278, 288 (C.M.A. 1962), ("the overt act need not be the last proximate act to the consummation of the offense attempted to be perpetrated.").

## C. Analysis

### 1. Appellant's Intent

Appellant argues the Government failed to put on sufficient evidence that he intended to commit sexual assault. Appellant concedes that he had sexual conversations with a person he believed to be a minor, and sent a picture of his genitalia, but states he took responsibility for those conversations by pleading guilty to the specifications for attempted sexual abuse of a child by indecent exposure and indecent communication. However, Appellant argues those conversations do not prove his intent to follow through with what he and "Courtney" were discussing. Appellant also contends that even if his intent was to have sex with "Courtney" on 16, 17, 18, 19, or 20 July 2017, this does not mean his intent was the same on 21 July 2017. Appellant relies on

six facts to support his argument: (1) Appellant showed little interest in continuing to talk to or meet "Courtney;" (2) Appellant did not have any sexual conversations with "Courtney" on 21 July 2017; (3) Appellant did not express any interest in "Courtney" when the AFOSI agent "teased" him by saying that "Courtney" was naked; (4) Appellant never attempted to go into the house or even walk towards it; (5) Appellant did not bring condoms or lubricant like "Courtney" requested; and (6) when Appellant was apprehended by AFOSI he was sitting in a running car, seatbelt on, with the car still in drive, and he told "Courtney" to come outside which indicates his intent was "likely to drop food off for her."

We are not persuaded by Appellant's arguments. Appellant revealed his specific intent to sexually assault "Courtney" repeatedly in sexually graphic detail over a period of days including on 20 July 2017 and had a specific plan already set on the 20th for the 21st of July. Appellant's argument that he needed to engage in sexually graphic conversation again on 21 July is misplaced. The Government only needed to prove beyond a reasonable doubt that Appellant had the specific intent on 21 July at the same time he committed the overt act. We reject, as did the military judge at trial, Appellant's argument that the evidence does not prove beyond a reasonable doubt that Appellant had the specific intent on 21 July 2017 to sexually assault "Courtney." Appellant's cited facts are also not persuasive based on the circumstantial evidence and totality of circumstances from the evidence presented at trial.

**2. Substantial Step**

Appellant argues, *inter alia*, that he never took a substantial step that apparently tended to effect the commission of the offense because "it is not fair to say that merely parking outside" is strongly corroborative of the firmness of Appellant's criminal intent especially where Appellant "did not get out of his car and was ready to drive away after dropping off the food." He further argues that there were no independent circumstances that interrupted their plan. We disagree. The military judge could have found that either traveling to, or stopping at, "Courtney's" house on 21 July 2017 was a substantial step.

As detailed above, over a period of days, Appellant communicated with a person who told him at least twice she was 14 years old. He described in graphic detail, on at least two occasions, the sexual acts he intended to perform on her. Ultimately, after planning to meet and taking actions on 21 July 2017 in furtherance of the plan, including asking about the babysitter and getting her food, he drove to "Courtney's" house, eventually stopping his car in line of sight of her house. Under the facts and circumstances of this case, we find Appellant did more than merely prepare to commit sexual assault on a child, he took a substantial step. We reject the contention that driving to

10

the house and eventually stopping the car in line of sight of the house did not unequivocally demonstrate that the crime would take place or that those acts were not strongly corroborative of Appellant's criminal intent. We are convinced Appellant expected to find "Courtney" alone at the house prepared to execute their plan of sexual acts, however, Appellant's plan was interrupted because "Courtney" was not a 14-year-old girl.

The evidence introduced by the Government at trial establishing Appellant's guilt of attempted sexual assault of a child is discussed more fully in the background sections of this opinion. Viewing that evidence including the testimony of all the witnesses in the light most favorable to the Government, we find that the military judge could have found Appellant guilty of all the essential elements of attempted sexual assault of a child beyond a reasonable doubt. Moreover, we are convinced beyond a reasonable doubt that Appellant attempted to sexually assault a child. Thus we conclude Appellant's conviction is legally and factually sufficient.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court